COURT OF APPEALS OF VIRGINIA

Present: Judges Barrow[*], Coleman and Willis
Argued at Alexandria, Virginia


DAVID F. BUCK

v.          Record No. 0564-93-4          OPINION BY
                                          JUDGE SAM W. COLEMAN III
COMMONWEALTH OF VIRGINIA                   MAY 2, 1995

               FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                      Paul F. Sheridan, Judge

          James F. Hurd, Jr., for appellant.

          Marla Lynn Graff, Assistant Attorney General
          (James S. Gilmore, III, Attorney General,
          on brief), for appellee.


     The appellant was convicted in a jury trial of possessing

cocaine in violation of Code § 18.2-250.  The sole issue on

appeal is whether the cocaine should have been suppressed because

the police officers seized it in violation of the Fourth

Amendment.  Upon review, we affirm the trial court's ruling that

the search and seizure were lawful and its admission of the

legally seized cocaine into evidence.

                                I.

     On November 10, 1992, at approximately 6:00 p.m., Officers

Dolan and Baine of the Arlington County Police Department were

patrolling a high crime area where drug sales frequently occur.

The officers were in "plain clothes" and patrolling in an

unmarked car.  The officers observed the appellant standing on a

_____
     [*] Judge Bernard G. Barrow participated in the hearing and
decision of this case and filed his dissent prior to his death.

street corner talking to a "group of guys." As the police car passed, the group dispersed. The officers circled the block. Upon returning, they saw the appellant, who had moved farther down the block, talking to a second "group of guys." As the police car passed, this group also dispersed. Upon circling and returning a third time, the officers observed the appellant in the back seat of a parked car bearing temporary license plates.

As the police car approached, the parked car began moving. Officers Dolan and Baine followed the car. They did not observe any activity or transactions that had the appearance of an exchange of drugs or money in or about the car. Three or four minutes later, the car returned and parked a block away from the location where the appellant was first seen in the car. The appellant got out of the car and walked up the sidewalk. The police officers pulled alongside the appellant, and Officer Baine exited the vehicle. He had his badge displayed on a chain around his neck. Officer Baine announced that he was a police officer. At that moment, the appellant quickly placed his closed fist to his mouth and began to run. The officers did not see anything in the appellant's hands or see him place anything in his mouth at the time, although it appeared from his motion that he was placing something in his mouth. Officer Baine pursued the appellant and tackled him within ten yards of the initial encounter. A scuffle ensued between the two of them. During the scuffle, the appellant was making a chewing motion.

The appellant was subdued and forcibly returned to the police car. There, he was restrained against the hood of the car by Officers Dolan and Baine. Officer Burke arrived on the scene. Officer Dolan held the appellant by his head and chin. Officer Burke told the appellant that, if necessary, he (Officer Burke) would "extract" from his mouth the object that appellant was chewing. The appellant spit out one plastic packet that was found to contain crack cocaine.

II.

Law enforcement officers do not violate the Fourth Amendment merely by approaching an individual on the street, identifying themselves, and asking the individual questions. Baldwin v. Commonwealth, 243 Va. 191, 196, 413 S.E.2d 645, 647-48 (1992) (citing Florida v. Royer, 460 U.S. 491, 497 (1983)). When Officers Dolan and Baine approached the appellant, he was on the sidewalk. Officer Baine had time only to announce that he was a police officer before the appellant took flight. The officers had not restrained the appellant, blocked his path of departure, or commanded him to stop. By merely approaching the appellant and identifying himself as a policeman, Baine effected no stop or seizure. At that time, the Fourth Amendment had not been implicated. This was merely a consensual encounter.

The United States Supreme Court has delineated two types of seizures which implicate the Fourth Amendment, investigatory stops and arrests. Terry v. Ohio, 392 U.S. 1, 15-16 (1968). To

-3-

make a legal investigatory stop, an officer must possess a reasonable, articulable suspicion that "criminal activity may be afoot." United States v. Sokolow, 490 U.S. 1, 7 (1989). In order for an investigatory stop to be reasonable, the officer "must be able to point to specific articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21. No "litmus test" exists for determining reasonable suspicion. Harmon v. Commonwealth, 15 Va. App. 440, 444-45, 425 S.E.2d 77, 79 (1992).

When determining if reasonable suspicion exists, courts must consider that "[t]rained and experienced police officers . . . may be able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer." Richards v. Commonwealth, 8 Va. App. 612, 616, 383 S.E.2d 268, 271 (1989) (citing United States v. Brignoni-Ponce, 422 U.S. 873, 884-85 (1975)). The officers' observations gave them sufficient reasonable, articulable suspicion to detain appellant.

Officer Baine testified that he and Officer Dolan were patrolling an area known as an open air drug market when they observed the appellant standing on the corner. They observed him get into a car as a passenger. They then followed the car as it circled around the block, and three or four minutes later, the officers observed the appellant exit the vehicle only one block from where he originally was picked up. Officer Baine testified that based on his experience as a drug officer, "[s]ome of the

smarter drug dealers will put you in a car, drive it around the block or get in your car to where the transaction is over."

After the officers approached the appellant and identified themselves, appellant made a motion toward his mouth with his fist and took flight. Although flight alone may not supply sufficient reason to suspect a person of criminal activity, it may otherwise color apparently innocent conduct and, under appropriate circumstances, give rise to reasonable suspicion of criminal activity. See Quigley v. Commonwealth, 14 Va. App. 28, 33, nn.5-6, 414 S.E.2d 851, 854, nn.5-6 (1992) (citing United States v. Lane, 909 F.2d 895, 899, cert. denied, 498 U.S. 1093 (1991)).

When the appellant appeared to have put something in his mouth and fled from the officers, after they had observed him enter a car, circle the block, and then exit the car in an area known as an open drug market, they had reason to believe appellant had just bought or sold drugs. Therefore, the officers were justified in stopping the appellant to investigate his activity. Under those circumstances, the physical detention of the appellant was reasonable and lawful. An officer, while obeying the constitutional requirements of Terry, may stop, question, and physically detain an individual, if necessary. See Burgess v. Commonwealth, 14 Va. App. 1018, 1021-22, 421 S.E.2d 664, 666 (1992); see also United States v. Moore, 817 F.2d 1105, 1108 (4th Cir. 1987), cert. denied, 484 U.S. 965 (1987) (stating

that a brief but complete restriction of liberty is valid under Terry); United States v. Crittendon, 883 F.2d 326 (4th Cir. 1989) (holding that the use of handcuffs during an investigatory stop is permissible to maintain the status quo or to protect the officer).

After physically restraining the appellant, Officer Baine observed that appellant was making a chewing motion.  Based on the officer's experience, he testified that chewing and swallowing "is a common way of disposing of crack cocaine.  It's very common for people to eat cocaine whenever we approach them." If an officer has reason to believe that a person is committing a felony in his presence by possessing contraband or a controlled substance, the officer has probable cause to arrest the individual without a warrant.  When an officer has probable cause to arrest a person, the officer may search the person, particularly where the evidence is of a highly evanescent nature. See Poindexter v. Commonwealth, 16 Va. App. 730, 733 n.1, 432 S.E.2d 527, 529 n.1 (1993) (citing 2 Wayne R. Lafave, Search and Seizure § 5.4(b) at 519-20 (2d ed. 1987); see also Cupp v. Murphy, 412 U.S. 291 (1973) (approving of a limited search to preserve "highly evanescent evidence," if an officer has probable cause to arrest but does not arrest the suspect).

The facts support the finding that the police officers, having observed the appellant's activity, reasonably believed that the appellant was trying to eat and destroy drugs in his

mouth. Therefore, they had probable cause to arrest the appellant based on the objective, reasonable belief that he had been or was committing a crime. Likewise, under the circumstances indicating that the appellant was destroying the evidence and creating a danger to his own health and safety, the officers' use of physical force to cause him to expel the drugs was reasonable and was conducted in a reasonable manner. See Tipton v. Commonwealth, 18 Va. App. 370, 373, 444 S.E.2d 1, 2-3 (1994); see also Johnson v. Commonwealth, 213 Va. 102, 189 S.E.2d 678 (1972), cert. denied, 409 U.S. 1116 (1973).

We, therefore, affirm the decision of the trial court.

Affirmed.

Barrow, J., dissenting.


The officers may have had the authority to detain the defendant for further investigation, but they had no authority to seize him by the head and chin and force him to spit out the object in his mouth.  In doing so, the officers violated the defendant's right to be secure in his own person.

Our decision in this case is controlled by the Supreme Court's decision in Harris v. Commonwealth, 241 Va. 146, 400 S.E.2d 191 (1991).  In that case, the court held that a police officer violated a defendant's rights under the Fourth Amendment of the United States Constitution when the officer opened a film canister found in the defendant's pocket.  Id. at 148-49, 400 S.E.2d at 194.

Just as the officer in this case testified that, based on his experience, people commonly swallow cocaine when the police approach them, the officer in Harris testified that, based on his experience, people keep narcotics and drugs in film canisters. Id. at 154, 400 S.E.2d at 196.  The Supreme Court ruled, however, that "law-abiding citizens, on a daily basis, also use film canisters to store film, . . . a legitimate use."  Id.  Likewise, law-abiding citizens, on a daily basis, also place chewing gum, food, medicine, toothpicks, and other legitimate objects in their mouths.

The police did not see the defendant place anything in his mouth.  They only saw him place his closed fist to his mouth

before he ran.  Only after the police tackled the defendant and placed handcuffs on him did they see him "making a chewing gesture."  They then forced him to open his mouth.

The defendant's earlier behavior gave the officers no reason to suspect that he possessed cocaine.  They had seen him twice with two groups of men who had dispersed as the police car drove past.  The officers then saw him in the back seat of a parked car.  Finally, when one of the officers jumped out of the police car and announced that he was a police officer, the defendant ran.  The defendant's behavior, while displaying a fear of or alienation from the police, did not indicate that he possessed cocaine or other drugs.

In my opinion, the police had no justification for holding the defendant's head and chin and forcing him to reveal the object he had in his mouth.  Therefore, I would reverse the defendant's conviction.