A Rehearing En Banc was granted in this case on August 14, 1995.

COURT OF APPEALS OF VIRGINIA

Present:  Judges Coleman, Elder and Senior Judge Cole
Argued at Richmond, Virginia


HERBERT LEE EVANS

v.          Record No. 0577-94-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE LARRY G. ELDER
JUNE 27, 1995


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Thomas N. Nance, Judge


David R. Lett for appellant.

Robert B. Condon, Assistant Attorney General
(James S. Gilmore, III, Attorney General, on
brief), for appellee.


Herbert Lee Evans (appellant) appeals his conviction for

possession of cocaine.  Appellant's sole contention is that the

cocaine seized by the police should have been suppressed because

the officer seized it in violation of appellant's fourth

amendment rights.  Upon review, we hold that the trial court

erred in ruling that the search and seizure were lawful and in

admitting the illegally seized cocaine into evidence.  Because

the cocaine evidence was indispensable to prove the

Commonwealth's case, we reverse the conviction and dismiss the

indictment.

On the night of October 20, 1993, while patrolling a high

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

drug area of Richmond, Officer Michael Talbert observed appellant standing in the middle of the street with another individual. Appellant and the person made a hand-to-hand exchange, but Talbert could not see what had been exchanged. Appellant appeared to notice the police car coming towards him, and he immediately approached a vehicle that was parked with its engine running. Appellant, who had a small black leather pouch in his left hand and a pager in his right hand, placed his left hand inside the open window of the vehicle. When appellant removed his hand, he was no longer holding the pouch. Appellant transferred the pager from his right hand to his left hand.

Talbert testified that, based upon his experience and training in narcotics detection and his observation of all of the circumstances, he believed appellant had engaged in a drug transaction. Talbert approached the vehicle, shined his flashlight inside, saw a pouch, reached inside, and retrieved the pouch from the floorboard behind the driver's seat. Talbert could not see inside the pouch without picking it up. When he shined his flashlight into the pouch, Talbert saw that it contained bags of a substance that he suspected was cocaine. Talbert arrested appellant for possession of cocaine. When the police searched the vehicle incident to appellant's arrest, they found in the trunk crack cocaine hidden inside a candy container in a leather jacket.

At a bench trial, appellant was convicted of possession of

cocaine.

In determining whether Talbert had probable cause to seize the pouch without a warrant, we are guided by certain principles. The test of the constitutional validity of a warrantless search "'is whether at the moment of arrest the arresting officer had knowledge of sufficient facts and circumstances to warrant a reasonable man in believing that an offense has been committed.'" Hardy v. Commonwealth, 11 Va. App. 433, 434, 399 S.E.2d 27, 28 (1990) (quoting DePriest v. Commonwealth, 4 Va. App. 577, 583-84, 359 S.E.2d 540, 543 (1987), cert. denied, 488 U.S. 985 (1988)). Furthermore, although we are required to "test what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control," we must consider that "the probable-cause determination must be based on objective facts that could justify the issuance of a warrant by a magistrate." Buck v. Commonwealth, 20 Va. App. 298, __, 456 S.E.2d 534, __ (1995) (quoting Derr v. Commonwealth, 6 Va. App. 215, 219-20, 368 S.E.2d 916, 918 (1988)) (other citations omitted). See also DePriest, 4 Va. App. at 584, 359 S.E.2d at 543 ("[I]n assessing an officer's probable cause for making a warrantless arrest [or seizure and search], no less strict standards may be applied than are applicable to a magistrate's determination that [a] . . . warrant should issue.") (citing Washington v. Commonwealth, 219 Va. 857, 862, 252 S.E.2d 326, 329 (1979)).

The Commonwealth claims that Talbert had probable cause to seize the pouch and search its contents because (1) he observed hand-to-hand contact between appellant and a third party; (2) the exchange occurred in a high drug area; (3) appellant and the third party quickly parted after seeing the police; (4) appellant placed the pouch in a vehicle and distanced himself from the vehicle; (5) appellant possessed a pager; and (6) Talbert's experience and training in narcotics detection allowed him to conclude he witnessed a drug transaction.

A complete review of the record shows that "[a]t most, the facts raised a suspicion that criminal activity was afoot; the facts did not provide [Talbert] with probable cause to believe that the appellant had or was committing a crime." Buck, 20 Va. App. at __, 456 S.E.2d at __ (quoting DePriest, 4 Va. App. at 584-85, 359 S.E.2d at 544). The behavior Talbert observed could have been equally indicative of lawful activity, especially in light of the fact that he did not see what was being exchanged by the parties.

This Court held in DePriest that the arresting officer's observations did not establish probable cause to arrest the appellant for selling narcotics. In DePriest, the officer observed the appellant over a three and a half hour period engaging in hand-to-hand contact with multiple people and exchanging money and other objects with multiple people. We held that "while the events observed by [the officer] were suspicious

they did not alone, establish probable cause," but a mere reasonable suspicion of criminal activity.  DePriest, 4 Va. App. at 584-85, 359 S.E.2d at 543-44.  We also reiterated that "'a sequence of events which is typical of a common form of narcotics transaction may create a suspicion in a police officer's mind, but probable cause, of course, requires more than mere suspicion.'"  DePriest, 4 Va. App at 585, 359 S.E.2d at 543-44 (quoting United States v. Green, 670 F.2d 1148, 1151 (D.C. Cir. 1981)) (emphasis added).

Other decisions from this Court are instructive in reaching our conclusion.  In Smith v. Commonwealth, 12 Va. App. 1100, 407 S.E.2d 49 (1991), the arresting officer saw the appellant at night in a playground in a drug area and saw him quickly move to put his hand into his pants when the officer's marked car came into view.  However, the officer observed no other behavior that would have indicated that the appellant was involved in criminal activity.  This Court held that these facts did not provide sufficient cause to even detain the appellant for an investigatory stop, which requires a mere reasonable, articulable suspicion of criminal activity (a more lenient standard than probable cause).

In Commonwealth v. Grimstead, 12 Va. App. 1066, 407 S.E.2d 47 (1991), the arresting officer stopped the appellant's car in the early morning hours for speeding and saw a hemostat in the vehicle's ashtray.  The officer removed the hemostat to examine

it, observed what he thought were traces of marijuana, and arrested the appellant. We held that on this evidence, "the officer did not have probable cause to seize the hemostat as evidence of a crime . . ." as the hemostat's presence could only have justified a suspicion of criminality. 12 Va. App. at 1070, 407 S.E.2d at 49.

As the dissent recognizes, this case offers some indicia that appellant possessed cocaine. However, "[a]t most, the facts raised a suspicion that criminal activity was afoot; the facts did not provide [Talbert] with probable cause to believe that the appellant had or was committing a crime." Buck, 20 Va. App. at __, 456 S.E.2d at __. Consequently Talbert lacked probable cause to seize and search the pouch or arrest appellant. This case is unlike Commonwealth v. Ramey, 19 Va. App. 300, 450 S.E.2d 775 (1994), where the arresting officer viewed a plastic bottle resembling a "bong" partially protruding from the pack the appellant wore at his waist. While issuing a traffic summons to the driver of the vehicle in which the appellant was a passenger, the officer seized the device and arrested the appellant for possession of cocaine. We held that "[b]ecause of the distinctive character of the plastic bottle with foil on top and the highly unlikely event that it would have a legitimate use, the officer had probable cause to believe that the 'homemade bong'" might be useful as evidence of a crime. Id. at 305, 450 S.E.2d at 777.

Accordingly, the seizure of the pouch and its subsequent search were illegal.  We therefore reverse the conviction and dismiss the indictment.

<u>Reversed and dismissed.</u>

Cole, S. J., dissenting.

I respectfully disagree with the majority's decision to suppress the evidence of cocaine. I agree with the trial court that the police officers had probable cause to seize it.

In reviewing a trial court's denial of a motion to suppress, "the burden is upon [the appellant] to show that this ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error." Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731, cert. denied, 449 U.S. 1017 (1980).

The only issue in this case is whether the police officers had probable cause to seize from the appellant's car a black leather pouch containing cocaine. Admittedly, it is difficult to define probable cause. Professor Bacigal has described probable cause in this manner:

> The law is clear as to what is not probable cause. It is not proof beyond a reasonable doubt; it is not a prima facie showing; it is not bare suspicion. The law is less clear as to what is probable cause. As the name implies, probable cause deals with probabilities, but the courts have not held that it means more probable than not.
>     . . .
>
> The courts recognize that probable cause involves the factual and practical considerations of everyday life. Probable cause is established when the totality of the circumstances warrant a person of reasonable caution in the belief that seizable items are

–8–

located in the area to be searched.  The
required degree of probability is therefore
expressed as a "reasonable belief" and not in
terms of any mathematical precision.  The
distinction between "reasonable belief" and
"bare suspicion" remains elusive and can only
be determined by focusing on the precise
facts of individual cases.

Ronald J. Bacigal, <u>Virginia Criminal Procedure</u> § 4-7 (3d ed.
1994).  <u>See also</u> <u>Brinegar v. United States</u>, 338 U.S. 160 (1949);
<u>Saunders v. Commonwealth</u>, 218 Va. 294, 237 S.E.2d 150 (1977).

The United States Supreme Court has frequently
remarked that probable cause is a flexible,
common-sense standard.  It merely requires
that the facts available to the officer would
"warrant a man of reasonable caution in the
belief" that certain items may be contraband
or stolen property or useful as evidence of a
crime; it does not demand any showing that
such a belief be correct or more likely true
than false.  A "practical, nontechnical"
probability that incriminating evidence is
involved is all that is required.

<u>Texas v. Brown</u>, 460 U.S. 730, 742 (1983) (citations omitted).
<u>Accord</u> <u>Delong v. Commonwealth</u>, 234 Va. 357, 366, 362 S.E.2d 669,

673 (1987), cert. denied, 485 U.S. 929 (1988) (using identical language to define probable cause).

I shall focus upon the facts and circumstances of this particular case to determine whether the police officer at the time he made the decision to seize the pouch had probable cause to believe that contraband was located in the area to be searched. The only witness to the facts was Michael R. Talbert of the Richmond Police Department. He is a veteran police officer with eight years of experience, six and half of which were spent investigating narcotics crimes. He had received classes in narcotics and surveillance techniques. He had performed well over two hundred surveillances and was the primary arresting officer of over five hundred persons on narcotics offenses. He had been involved with investigating both selling and buying drugs on the streets.

On the night in question Talbert and two other officers were on patrol in a "high drug area." Talbert himself had made a number of arrests in the area on previous occasions. As he turned onto Walcott Place, he observed the appellant and another individual standing in the middle of the street having hand-to-hand contact. He testified that what he observed was more than a handshake and that something had been exchanged, but he did not know what it was. Talbert stated that if this was all he observed, he would not have stopped his vehicle.

In addition, he observed that when the police car turned the

corner, the defendant and the other individual turned and looked in their direction. Immediately, the two men split up. The other individual went to Talbert's left and appellant went in the opposite direction towards a vehicle that was parked on the street.

Talbert observed that appellant had a pager in his right hand and a black leather pouch in his left hand. Talbert explained that a pager is typically used in drug transactions.

Appellant walked towards the parked car. Talbert noticed that the car's motor was running and the driver's window was down. As appellant walked beside the car on the street side, the following events occurred according to Talbert's testimony:

> [Appellant] slipped his left hand into the car. When he pulled it back out, he was no longer holding the black pouch that he originally had been holding. At that time, he put his hands down in front of him, and then he kind of discretely changed the pager from right hand to his left hand. About this time, he was at the back of the car . . . .

At this point the officer stopped his vehicle and walked to the place where the pouch had disappeared. He shined his flashlight into the car and observed the black pouch laying on the floor in the back seat behind the driver's seat. Talbert testified that all of these facts and circumstances together led him to the conclusion that he had observed a drug transaction. He stated that "the actions of [appellant] were typical of what I have seen, not only from being in a police vehicle and pulling up on people, but from surveillances, observing throwdowns."

-11-

Talbert reached into the car, seized the pouch, and observed that it contained rock-like substances in clear plastic baggies. Further observation revealed that the pouch contained seven baggies with a rock of cocaine valued at fifty dollars in each bag. Appellant was placed under arrest for possession of cocaine with intent to distribute. Additional cocaine was found in the trunk of the vehicle in a coat belonging to appellant.

The trial court denied the motion to suppress the drug evidence for the following reason:

> Well, the officer articulated very well
> . . . . But his indication was the hand-to-
> hand contact; the high drug area; the
> splitting of the two men, going in opposite
> directions; your client, obviously, getting
> rid of what he had in his hand; the pager. I
> think he had the right to go to the vehicle
> and get the pouch.
> Once he looks in the pouch, if he can
> legally look in that pouch, then, of course,
> he can legally go in the trunk.

Although none of these factors is sufficient by itself to constitute probable cause, it is their combination under the particular circumstances confronting Talbert that is the proper subject of our consideration. Probable cause exists if the totality of the circumstances, as viewed by a reasonable and prudent police officer in light of his training and experience, would lead a man of reasonable caution to believe that the item to be seized may be contraband or useful as evidence of a crime. Such belief need not be correct or more likely true than false.

The majority states that the behavior observed by Talbert

could have been equally indicative of lawful activity, especially in light of the fact that he did not see what was being exchanged by the parties. Given this set of circumstances and the order in which they occurred, Talbert concluded that Evans had engaged in or was engaged in criminal activity. I cannot perceive any innocent explanation for the sequence of the appellant's behavior, and he did not suggest any in the trial court or in this Court.

In taking this position, the majority has abandoned the standard of "reasonable belief" and requires the Commonwealth to prove a "prima facie" case. If the Commonwealth is required to directly prove the presence of cocaine, we are no longer dealing with probabilities but with a higher standard than the law requires. The Supreme Court has put this issue to rest. In Illinois v. Gates, 462 U.S. 213 (1983), the Court said:

> [P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to sub silentio impose a drastically more rigorous definition of probable cause than the security of our citizens demands. We think the Illinois court attempted a too rigid classification of the types of conduct that may be relied upon in seeking to demonstrate probable cause.
> . . . In making a determination of probable cause the relevant inquiry is not whether particular conduct is "innocent" or "guilty", but the degree of suspicion that attaches to particular types of noncriminal acts.

462 U.S. at 243-44, n.13. See also United States v. Sokolow, 490

U.S. 1, 8 (1989).

This Court's decision in DePriest v. Commonwealth, 4 Va. App. 577, 359 S.E.2d 540 (1987), cert. denied, 488 U.S. 985 (1988), cited in the majority opinion in support of their position, in fact supports my point of view in this case. The only evidence presented by the Commonwealth in DePriest was that an experienced police officer was conducting a surveillance. He observed several persons approach DePriest and a companion and give them money. One of them would leave and, in about five minutes, return and give something to the person. The officer could not identify the item exchanged for money. According to the officer, he arrested DePriest "'based upon my observation of Mr. Toney and Mr. DePriest for the three and a half hour period, and then based upon the contraband found on Mr. Toney and based upon the currency that I had observed Mr. Toney give Mr. DePriest after what I suspected to be drug transactions, and based on my experience.'" Id. at 581–82, 359 S.E.2d at 542.

In rejecting the Commonwealth's argument in DePriest, this Court stated that the events witnessed by the officer provided him with a mere suspicion of criminal activity but not probable cause. The Court explained the rationale behind its decision as follows:

> It is relevant in this regard that [the officer] did not observe suspected narcotics change hands, nor did he observe the exchange of any object which in his experience suggested narcotics. Further, there was no evidence that the area under surveillance was noted for [drug] transactions, or that the

> transactions observed were furtive in nature.
> In summary, while the events observed by
> Detective Carter were suspicious they did
> not, alone, establish probable cause.

4 Va. App. at 585, 359 S.E.2d at 544.

All of these factors, noted as missing in DePriest, are present in this case, but have not been mentioned in the majority opinion.

The majority cites Smith v. Commonwealth, 12 Va. App. 1100, 407 S.E.2d 49 (1991), and Commonwealth v. Grimstead, 12 Va. App. 1066, 407 S.E.2d 47 (1991), as authority for its position. I disagree because the totality of the circumstances in each of these cases is clearly distinguishable.

In Smith, we pointed out some of the factors to be considered in examining the circumstances necessary to show criminal activity. We said we may consider "'the "characteristics of the area" where the stop occurs, the time of the stop, whether late at night or not, as well as any suspicious conduct of the person accosted such as an obvious attempt to avoid officers or any nervous conduct on the discovery of their presence.'" Id. at 1103, 407 S.E.2d at 51-52 (citations omitted). As stated by the majority, the only evidence present in the Smith case was that

> the arresting officer saw the [accused] at
> night in a playground in a drug area and saw
> him quickly move to put his hand into his
> pants when the officer's marked car came into
> view. However, the officer observed no other
> behavior that would have indicated that the
> appellant was involved in criminal activity.

-15-

The facts here are clearly distinguishable from that case.

In Grimstead, the police officer stopped the defendant for speeding. He observed in open view a hemostat in the ashtray. He removed Grimstead from the car. He testified that in his mind "he needed to make an observation as to whether or not they had been used as any illegal use, anything other than their intended use; and to do so, I needed to examine them." Id. at 1068, 407 S.E.2d at 48. This testimony showed that the officer did not believe he had probable cause to seize the item. The officer seized the hemostat and observed marijuana residue on the tips of the hemostat. Based upon those facts, this Court held that the officer did not have probable cause to seize the hemostat as evidence of a crime. Again, this case is clearly distinguishable upon the facts.

A case factually more analogous to this case is United States v. Green, 670 F.2d 1148 (D.C. Cir. 1981). In Green, an experienced police officer in an area known for drug activity observed two (other) persons engaged in a transaction of a type common to drug peddling. The officer noticed that the parties attempted to conceal the exchanged object. The defendant, when he noticed the police approaching, turned and rapidly walked away and made a motion as if to dispose of the object he was carrying. The trial court found that the totality of circumstances presented was sufficient to establish probable cause. It relied upon these factors: (1) the sequence of events between the

parties which was typical of a two-party narcotic transaction; (2) the movement of the three persons' cupped hands and Green's subsequent stuffing of the protruding paper bag back into his coat pocket, suggesting an attempt to conceal the object; and (3) the appearance of flight and evasion when pursued by the officer. Based upon the combination of these factors, the circuit court held the evidence sufficient to constitute probable cause.

Based upon the foregoing facts and case law analyses, I find that the evidence is sufficient to establish probable cause for Officer Talbert to seize the black leather pouch. Accordingly, I cannot find that the trial court was plainly wrong or that its decision was without credible evidence to support it in refusing to suppress the drug evidence. I would affirm the decision of the trial court.