# CIRCUIT COURT OF THE CITY OF RICHMOND

Commonwealth of Virginia

v.

Keitha Thomas

November 21, 1995

Case No. F-95-2895

BY JUDGE DONALD W. LEMONS

The matter before the Court is the defendant's Motion to Suppress certain items seized from the defendant's person on August 7, 1995, and certain statements made by the defendant on August 8, 1995. The Court heard evidence and the arguments of counsel on October 27, 1995. For the following reasons, the Motion to Suppress is denied with regard to the seized evidence, but is granted with respect to the defendant's statement.

In the early morning hours of August 7, 1995, Officer Charles A. Bishop was on routine patrol when, over his radio, he learned of other units in his vicinity responding to a report of an assault. Bishop proceeded to the scene to see if he could be of assistance to other officers.

Arriving on the scene, Officer Bishop learned that the combatants in the fight had been Keitha Thomas, the defendant, and Carl Williams. Officer Bishop remained at the scene while another officer, Scott Leonard, escorted Thomas to the magistrate's office to obtain a warrant against Williams for assault.

After Thomas and Officer Leonard returned to the scene with an arrest warrant, Williams was placed under arrest. While he was being arrested, Williams said to Officer Bishop, "If she's going to rat me out, I'm going to rat her out." Williams told Officer Bishop that Thomas had broken into

a building on Eighth Street. After describing the location of the building, Williams detailed the manner in which Thomas had gained access to the building and stated that she had the money she had stolen in her pockets and in a bag she was carrying. At this point, Officer Leonard removed Williams from the scene.

Officer Bishop asked Thomas to wait for him with another officer at Baker Street, the scene of the assault. Officer Bishop testified that she was not free to leave. Officer Bishop then left the scene to investigate the information provided by Williams.

Arriving at the Eighth Street Diner, Officer Bishop discovered that it had been broken into in the manner described by Williams. Having verified Williams' information, Officer Bishop returned to Baker Street.

Once there, Officer Bishop informed Thomas that she was under investigation for burglary, read her *Miranda* rights to her, and asked her to empty her pockets. The defendant complied, revealing a large amount of change and six one dollar bills. On one of the bills was written, "Good Luck, Hatoum." Officer Bishop returned to the Eight Street Diner to determine what was missing. He had a brief discussion with the owner, Yuma Hatoum, and returned to Baker Street and formally arrested the defendant.

Subsequent to her arrest, the defendant was brought before the General District Court on August 8, 1995, at which time she was assigned court appointed counsel. Later on August 8, 1995, Detective Calvin Lane visited the defendant at the jail, to discuss the burglary of the Eighth Street Diner and another burglary. There is some dispute as to whether or not the defendant informed Detective Lane that she was represented by counsel. During the course of her conversation with Detective Lane, the defendant made several potentially incriminating statements.

The defendant claims that the evidence seized from her person on August 7, 1995, should be suppressed because she was unlawfully seized when Officer Bishop asked her to remain at Baker Street, the scene of the assault.

It is clear that the defendant was "seized" for Fourth Amendment purposes when Officer Bishop left Baker Street to investigate the burglary of the Eighth Street Diner. A reasonable person would not believe that she was free to leave after being asked to wait, in the company of another officer, for the return of a police officer. Because a reasonable person would not have felt free to leave, the defendant was "seized" for Fourth

Amendment purposes. *See, e.g., Baldwin v. Commonwealth*, 243 Va. 191, 195-99 (1992); *Waugh v. Commonwealth*, 12 Va. App. 620, 621-22 (1991).

However, the determination that the defendant was seized is the beginning rather than the end of the analysis. The Fourth Amendment does not protect against all seizures. "The Framers of the Fourth Amendment have given us only the general standard of 'unreasonableness' as a guide in determining whether searches and seizures meet the standard of that Amendment . . . ." *Cady v. Dombrowski*, 413 U.S. 433, 448 (1973). Thus, to determine whether or not the seizure of the defendant was lawful, the Court must determine whether or not the officer acted reasonably. "In order for an investigatory stop to be reasonable, the officer 'must be able to point to specific articulable facts which, taken together with reasonable inferences from those facts, reasonably warrant that intrusion.' No 'litmus test' exists for determining reasonable suspicion." *Buck v. Commonwealth*, 20 Va. App. 298, 302 (1995) (citations omitted).

In this case, Officer Bishop had reasonable articulable suspicion that a criminal offense had been committed by Thomas. Williams, Thomas' boyfriend, told the officer that she had committed the burglary. Williams explained in detail the manner in which the defendant gained entry to the building. Faced with a detailed report of the defendant being engaged in criminal activity, Officer Bishop had a duty to investigate. "[I]t would have been 'poor police work' for an officer, with a report of criminal activity, to have failed to investigate the alleged crime." *Lee v. Commonwealth*, 18 Va. App. 235, 239 (1994) (citation omitted).

Having been told that Thomas had recently burglarized a building on Eighth Street and still had the fruits of her crime on her person, it was reasonable for Officer Bishop to have her wait for him, giving him an opportunity to investigate Williams' information. Even if Williams' information did not give Officer Bishop probable cause to believe Thomas had committed a crime, the detention was reasonable. As the United States Supreme Court has noted:

> The Fourth Amendment does not require a policeman who lacks probable cause to arrest to simply shrug his shoulders and allow a crime to be committed or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine [her] identity or to *maintain the status quo momentarily while obtaining more information, may*

*be most reasonable in light of facts known to the officer at the time.*

*Adams v. Williams*, 407 U.S. 143, 145-46 (1972) (emphasis added) (citations omitted).

The Court explained the limits of such investigations in *Florida v. Royer*, noting:

> The predicate permitting seizures on suspicion short of probable cause is that law enforcement interests warrant a limited intrusion on the personal security of the suspect. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. This much, however, is clear: an investigative detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.

460 U.S. 491, 500 (1983) (plurality opinion).

In this case, Officer Bishop's conduct falls well within the limits of reasonableness established in *Adams* and *Royer*. Having obtained a detailed accusation of criminal conduct from Thomas' boyfriend, he briefly detained her so that he could verify or dispel the accusation. The method he chose "was the least intrusive means reasonably available to verify or dispel" Williams' accusation. Having found that Officer Bishop's initial detention of Thomas was reasonable as an investigatory stop, it is clear that the initial detention does not taint the subsequent discovery of incriminating evidence.

Although he did not *formally* arrest Thomas immediately upon his return to Baker Street, Officer Bishop, having verified Williams' accusation, had probable cause to arrest her. Therefore, the search of Thomas' person at Baker Street was valid as a search incident to arrest. It does not matter whether the arrest occurred shortly before or shortly after the search. *See e.g., Rawlings v. Kentucky*, 448 U.S. 98 (1980); *Wright v. Commonwealth*, 222 Va. 188 (1981). Therefore, the Motion to Suppress is denied with respect to the items seized from Thomas' person on August 7, 1995.

Thomas also seeks to suppress certain statements she made to Detective Lane after her arraignment. She contends that the Commonwealth violated her Fifth Amendment privilege against self-incrimination and her Sixth Amendment right to counsel.

The Commonwealth concedes that the statement in question was obtained after Thomas had been assigned counsel in the General District Court and that the interrogation occurred without Thomas' counsel being present. The only factual dispute is whether or not Detective Lane was aware that Thomas was represented by counsel.

Whether or not Detective Lane was aware that Thomas was represented by counsel is irrelevant to the Sixth Amendment inquiry. The United States Supreme Court has noted that:

> Sixth Amendment principles require that we impute the State's knowledge from one state actor to another. For the Sixth Amendment concerns the confrontation between the State and the individual. One set of state actors (the police) may not claim ignorance of defendants' unequivocal request for counsel to another (the court).

*Michigan v. Jackson*, 475 U.S. 625, 634 (1986).

Because the interrogation of the defendant took place without her lawyer being present, it violated the Sixth Amendment. The fact that Detective Lane read her *Miranda* rights to her before interrogation does not save the encounter. *Id.* at 635-36; *See also*, *Edwards v. Arizona*, 451 U.S. 477, 484 (1981). Thomas' Motion to Suppress is granted with respect to the defendant's post-arraignment statements.