# CIRCUIT COURT OF THE CITY OF RICHMOND

Commonwealth of Virginia

v.

Larry M. Walker, Jr.

February 12, 1998

Case No. F-97-3036

BY JUDGE DONALD W. LEMONS

The matter before the court is defendant Larry M. Walker, Jr.'s Motion to Suppress evidence consisting of a firearm seized during an arrest of the defendant. For the reasons outlined below, the defendant's motion is denied.

On July 13, 1997, Officers James Hannah and Mark Wooten of the City of Richmond Police Department were on routine patrol of the Richmond Redevelopment and Housing Authority property known as "Mosby Court." Signs which state "No Trespassing" are posted throughout Mosby Court. On this day, at approximately 5:00 p.m., the officers saw the defendant seated on a porch in the area between Q and P Streets behind the 1000 block of North 20th Street. Officer Hannah observed that the defendant, whom he did not know, was seated next to a man whom he recognized as Darrell Williams. Officer Hannah testified that because of prior contact with Mr. Williams, he knew that Mr. Williams was not a resident of Mosby Court.

After approaching the defendant, who had begun to walk away from the porch, Officer Hannah asked the defendant if he could speak with him. The defendant did not reply and continued walking. The officer asked the defendant if he lived there, to which the defendant made no reply. Then Officer Hannah requested that the defendant show him his I.D., at which-

point the defendant displayed his I.D. to the officer. The defendant did not stop walking at this time. Officer Hannah testified that the address on defendant's I.D. was 857 Pleasant Street, a location outside the area of Mosby Court.

The officer commented, "you don't live here," and the defendant stopped walking. Officer Hannah inquired as to whether the defendant was visiting anyone, and the defendant did not answer. A woman standing nearby called out that the defendant was visiting her. As with Mr. Williams, Officer Hannah was acquainted with this woman and knew that she did not live in Mosby Court. Based upon all of these factors, the officer then told the defendant that he was under arrest for trespassing. Nonetheless, the defendant began to walk away, at which point the officer grabbed his shirt. Upon pulling on the defendant's shirt, the officer noticed "a large bulge on his left side" and stopped the defendant. Upon searching the defendant incident to the arrest, the officer discovered a gun.

Police officers do not violate the Fourth Amendment "by merely approaching an individual in a public place, by asking him if he is willing to answer some questions or by putting questions to him if he is willing to answer." *Richards v. Commonwealth*, 8 Va. App. 612, 615 (1989), *citing Florida v. Royer*, 460 U.S. 491, 497 (1983). In Richards, the court upheld the appellant's conviction of possession with intent to distribute cocaine based upon the trial court's finding that the initial encounter between the appellant and the officers was consensual. *Richards*, 8 Va. App. at 616. The court noted that, "[w]here a warrantless search is made, the burden of proof is on the Commonwealth to prove that consent is voluntarily given." *Id.* at 615. Further, "[w]hether such consent was voluntarily given is a question of fact to be determined from the totality of all the circumstances." *Id., citing, Lowe v. Commonwealth*, 218 Va. 670, 678 (1977).

A similar consensual encounter was found in *Buck v. Commonwealth*, 20 Va. App. 298 (1995). The court upheld the appellant's conviction for possession of cocaine, rejecting his argument that the evidence was the result of an illegal search. *Id.* In *Buck*, the officers observed the appellant in an area known to be "an open air drug market," and observed him enter a car, drive around the block, and return. The court held:

> [w]hen . . . [the officers] approached the appellant, he was on the sidewalk . . . . [one officer] only had time to announce that he was a police officer before the appellant took flight. The officers had not restrained the appellant, blocked his path of departure, or commanded him to stop. By *merely approaching the appellant* and

identifying himself as a policeman, [the officer] effected no stop or seizure. At this time, the Fourth Amendment had not been implicated. *This was merely a consensual encounter.*

*Id.* at 302 (emphasis added).

In *Richards*, the officer approached the appellant and requested that appellant show him his airline ticket and a form of identification. *Richards v. Commonwealth*, 8 Va. App. at 615. The court held that "[l]ikewise, the *Fourth Amendment was not implicated* when . . . [the officer] *asked appellant if he could see* his airline ticket and asked appellant if he had any *identification.*" *Richards*, 8 Va. App. 612, 615 (1989) (emphasis added).

In *Bell v. Commonwealth*, Record No. 2792-96-2 (Va. App. February 3, 1998), the court found that the trial court had properly denied appellant's motion to suppress the evidence seized by the police in a search of his person. The court found that "[the officer's] only interaction with appellant prior to arresting him was to ask what he was doing in the complex." *Id.* The court stated, "[q]uestioning by an officer, without more, does not implicate the Fourth Amendment, 'as long as the citizen [being questioned] voluntarily cooperates with the police'." *Id., citing, Payne v. Commonwealth*, 14 Va. App. 86, 88 (1992) (*quoting, United States v. Wilson*, 953 F.2d 116, 121 (4th Cir. 1991)).

Based upon the events which took place prior to and including Officer Hannah's request for the defendant's I.D., the court finds that the initial encounter was consensual. However, even if the request for the defendant's identification constitutes a *Terry* stop, it is supported by a reasonable articulable suspicion.

In order to have a valid stop, the officer "must be able to point to specific articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Bell v. Commonwealth, quoting, Terry v. Ohio*, 392 U.S. 1, 21 (1968). To justify a stop, an officer must possess a reasonable, articulable suspicion that "criminal activity may be afoot." *Buck v. Commonwealth*, 20 Va. App. 298, 302 (1995) (*quoting, United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

In *Bell*, police officers observed the appellant in Pinebrook Village, a complex throughout which "No Trespassing" signs were posted. Although one officer knew that the appellant's grandmother lived in the complex, the officer had warned the appellant that he must be visiting her while on the premises or he would be trespassing. Upon observing the appellant in a group within the complex, the officer noted that he was some distance from where his grandmother lived. After approaching him and asking him some

questions, the officer determined that appellant was with a friend who was not a resident of the complex. Pursuant to this inquiry, the officer arrested the appellant for trespassing. In a search incident to this arrest, the officer found several packets of cocaine, a pager, and over $400 in cash in his clothing.

Further, the court in *Bell* held that, "[a]ssuming [the officer's] questioning of appellant rose to the level of a seizure, the seizure was justified by reasonable articulable suspicion." *Id.* at footnote 1. The court stated, "[i]f there are articulable facts supporting a reasonable suspicion that a person had committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly, while attempting to obtain additional information." *Id., citing, DePriest v. Commonwealth*, 4 Va. App. 577, 585 (1987) (*quoting Hayes v. Florida*, 470 U.S. 811, 816 (1985)).

The court finds that the initial encounter between Officer Hannah and the defendant, including the officer's request for the defendant's I.D., was consensual. However, even if the request for the defendant's I.D. constituted a *Terry* stop, the officer had reasonable articulable suspicion to effect a stop. Reasonable articulable suspicion arose from Officer Hannah's observations of the defendant in a "No Trespassing" area, his presence with a non-resident of Mosby Court, and the defendant's quick movement away from the officer. The court finds further that, based upon the totality of the circumstances, including the attempt of another non-resident to establish the defendant as her guest, the I.D. demonstrating that the defendant did not live there, and the defendant's failure to respond to Officer Hannah's questions regarding whether he was visiting a resident, the officer's suspicion was elevated to the level of probable cause to arrest the appellant for trespassing in Mosby Court. A search which was incident to a lawful arrest revealed the weapon.

The Defendant's Motion to Suppress is denied.