COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Annunziata and Agee
Argued at Alexandria, Virginia


COMMONWEALTH OF VIRGINIA
                                   MEMORANDUM OPINION* BY
v.    Record No. 3013-00-2    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                        MAY 29, 2001
JAMES CHARLES DUNIGAN


            FROM THE CIRCUIT COURT OF FREDERICK COUNTY
                      John R. Prosser, Judge

           Steven A. Witmer, Assistant Attorney General
           (Mark L. Earley, Attorney General, on brief),
           for appellant.

           Roger A. Inger (Massie, Inger & Iden, P.C.,
           on brief), for appellee.


      James Charles Dunigan (defendant) was indicted for driving

after having been declared an habitual offender, in violation of

Code § 46.2-357, driving while under the influence of alcohol, in

violation of Code § 18.2-266, and unreasonable refusal to submit

to a breath test, in violation of Code § 18.2-268.3.  Defendant

filed a motion to suppress the evidence from the traffic stop on

the ground that the police lacked reasonable articulable suspicion

to stop the vehicle.  The trial court granted the suppression

motion, and the Commonwealth appeals that ruling.  We reverse the

trial court's ruling.

--------

      * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

On the evening of October 16, 1999 at approximately 10:00 p.m., Deputy Pat Grim (Grim) of the Frederick County Sheriff's Office was on patrol in the parking lot of Delco Plaza. A security officer from the Belle Star Restaurant approached Grim and pointed out three men who were walking toward a van in the parking lot. He told Grim that he believed the men were too intoxicated to drive. Grim approached the three men and spoke with them. Grim determined that they had been drinking. The men agreed not to drive, to go to Waffle House to get something to eat and to call someone to come and "get them."

An hour later Grim returned to the parking lot and noticed the same van driving toward him. When the van got close enough for the driver and Grim to make eye contact, the van made a 45 degree turn in front of Grim, pulled up to the curb of the parking lot and "the driver got out and ran." Grim did not give chase but put out a radio broadcast of the driver's description. Defendant and another passenger remained in the van and spoke with Grim. Grim took the two men back to the Waffle House. Grim observed the defendant and the other man for about fifteen minutes and noticed that they were still "intoxicated too much to drive."

Shortly before midnight Grim met with and spoke to Trooper Reginald Hoelen (Hoelen) of the Virginia State Police. Grim pointed out the van, which was about 200 yards away, and told Hoelen, "[i]f you see that van later, the guy is probably

-

intoxicated because he bailed out and ran."  Grim informed Hoelen that he believed "that the original driver was probably hiding somewhere waiting for the police to kind of disappear and come back and get his van," since that happens often if the vehicle is not towed.

At approximately "1:10/1:15, . . . an hour and a half or hour and forty-five minutes later," Hoelen returned to the area and saw that the van was gone.  Hoelen drove toward Front Royal searching for the van.  Just before Airport Road, Hoelen saw the van and paced the vehicle at 46 miles per hour in a 55 mile per hour zone.  The van appeared "to be very tenuous or cautious about everything they did."  The van turned onto Papermill Road and pulled off the road next to a cemetary.  There were no houses or open businesses nearby.  Hoelen activated his emergency equipment as he pulled to the side of the road.  The defendant got out of the driver's side of the van.  Hoelen asked him for his driver's license and registration.  Defendant admitted that he was driving on a restricted license and was arrested.

Hoelen testified that driving 46 miles per hour in a 55 mile per hour zone is unusual when there is no one else on the road and that it often is an indication of intoxication.  Defendant filed a motion to suppress, contending the officer lacked reasonable articulable suspicion to initiate the traffic stop.  The trial court found that "the Trooper had plenty of

-

cause or reasonable, articulable suspicion to fall in behind the van and follow it and observe it and keep it under surveillance" but that Hoelen lacked reasonable, articulable suspicion to stop the van because it was driven in a lawful manner.  The Commonwealth appeals that ruling.

## II.

In reviewing the trial court's ruling on a motion to suppress, we consider the evidence in the light most favorable to the prevailing party below, the defendant, granting to that evidence all reasonable inferences, and the trial court's decision will not be disturbed unless it is plainly wrong or without evidence to support it.  See Miller v. Commonwealth, 16 Va. App. 977, 979, 434 S.E.2d 897, 899 (1993).  "'"Ultimate questions of reasonable suspicion and probable cause"' . . . involve questions of both law and fact and are reviewed de novo on appeal." Wallace v. Commonwealth, 32 Va. App. 497, 503, 528 S.E.2d 739, 742 (2000) (quoting McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc) (quoting Ornelas v. United States, 517 U.S. 690, 691 (1996))).  However, we are bound by the trial court's factual determinations unless plainly wrong or without evidence to support them, granting deference to inferences reasonably drawn from those facts by police officers and "independently determine whether under the established law those facts satisfy the constitutional standard." Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d

-

921, 924 (2000) (citing Ornelas, 517 U.S. at 697-99); see also Giles v. Commonwealth, 32 Va. App. 519, 522, 529 S.E.2d 327, 329 (2000).

In order for a stop to be reasonable, the officer "'must be able to point to specific articulable facts which, taken together with rational inferences from those facts, reasonably warrant'" the stop. Buck v. Commonwealth, 20 Va. App. 298, 302, 456 S.E.2d 534, 536 (1995) (quoting Terry v. Ohio, 490 U.S. 1, 21 (1968)). "A reasonable articulable suspicion is more than an 'unparticularized suspicion or "hunch"'" requiring "at least a minimal level of objective justification" for the stop. Bass, 259 Va. at 475, 525 S.E.2d at 923 (citations omitted). "Suspicion of a 'particular crime' is not necessary 'to justify' a Terry stop, provided 'the officer can, based on the circumstances before him at the time, articulate a reasonable basis' for a 'general suspicion of some criminal activity.'" Miller, 16 Va. App. at 979-80, 434 S.E.2d at 899 (quoting Hatcher v. Commonwealth, 14 Va. App. 487, 490, 419 S.E.2d 256, 258 (1992); Wells v. Commonwealth, 6 Va. App. 541, 551, 371 S.E.2d 19, 24 (1988)). "The court must consider the totality of the circumstances in determining whether a police officer had a particularized and objective basis for suspecting that a person stopped may be involved in criminal activity." Bass, 259 Va. at 475, 525 S.E.2d at 924. The court must consider in determining if reasonable suspicion exists that "'[t]rained and experienced

-

police officers . . . may be able to perceive and articulate meaning given conduct which would be wholly innocent to the untrained observer.'" Buck, 20 Va. App. at 302, 456 S.E.2d at 536 (quoting Richards v. Commonwealth, 8 Va. App. 612, 616, 383 S.E.2d 268, 271 (1989) (citing United States v. Brignoni-Ponce, 422 U.S. 873, 883-84 (1975))).

Applying those standards to the instant case, we find the trial court erred. Hoelen knew of the two confrontations Grim had with the three intoxicated men and the van that evening. Grim identified the van to Hoelen. Hoelen noted its distinctive coloring and tag number. Hoelen, based on information provided by Grim, a trained police officer, was aware that during the second encounter with the van, the driver, upon making eye contact with the officer, got out of the van and fled. We have previously held that flight from a police officer standing alone may not necessarily indicate criminal activity, but it is a factor in determining reasonable suspicion. See Wallace, 32 Va. App. at 504, 528 S.E.2d at 742; Buck, 20 Va. App. at 303, 456 S.E.2d at 536; see also Illinois v. Wardlow, 528 U.S. 119, 124-26 (2000). From his first interaction with the three men and the van, Grim observed that all of the men were too intoxicated to drive the van. They were told not to drive, and the three men agreed to call someone to pick them up. A short time later, Grim saw the van in motion and when the driver made eye contact with Grim, he fled the scene. The driver's flight

-

in the totality of these circumstances reasonably led Grim to believe that the driver was not someone other than the three men who were still too intoxicated to drive. It was clear at that point that contrary to their agreement not to drive, they had in fact done so.

Although Hoelen was not a part of the initial confrontations, he had a reasonable basis to believe that the driver of the van might be intoxicated that evening. Grim told him "[i]f you see that van later, the guy is probably intoxicated because he bailed out and ran." Hoelen was also told "that the original driver was probably hiding somewhere waiting for the police to kind of disappear and come back and get his van." Thus, when Hoelen observed that the van was no longer in the parking lot he reasonably believed that the driver, along with the passengers who had been drinking and were too intoxicated to drive, had returned to the van and driven away. After Hoelen found the van, further evidence corroborated Grim's statements to him that the driver was likely intoxicated. As Hoelen followed the van, the "vehicle appeared to be very tenuous or cautious about everything they did" as it drove only 46 miles per hour in a 55 mile per hour zone. Hoelen testified that these are possible signs of an intoxicated driver. See Freeman v. Commonwealth, 20 Va. App. 658, 662, 460 S.E.2d 261, 263 (1995) (holding that driving at a slow speed is a factor to be considered in determining reasonable suspicion).

-

This is not a case where Hoelen received information about a possible crime from an anonymous informant. Hoelen obtained his information from Grim, a law enforcement officer, in person. Grim had firsthand knowledge of the criminal activity and explained the basis of that knowledge to Hoelen. See generally Giles, 32 Va. App. at 524, 529 S.E.2d at 329 (holding that a report from a citizen obtained by a police officer in person is different from an anonymous tip because the officer is able to "assess their credibility and the reliability of their information" particularly when they explain the source of their information). Thus, we find that Hoelen was justified in relying upon the information he obtained from Grim.

Defendant also argues that since Hoelen did not know who the driver was, it could have been a third party the three men told Grim they would call to drive them home. Thus, defendant argues that it was possible that no criminal activity was taking place. However, the standard is not whether a criminal act is occurring but whether the officer had a reasonable articulable suspicion that the person may be involved in criminal activity. See Bass, 259 Va. at 475, 525 S.E.2d at 924. After learning of Grim's interactions with the three men and the van and that the three men were too intoxicated to drive, Hoelen observed conduct that was, as defendant asserts, ambiguous and susceptible to an innocent explanation. However, the observed conduct also supported Hoelen's reasonable belief that the driver who fled from Grim had

-

returned and was still too intoxicated to drive the van. Accordingly we hold that reasonable articulable suspicion supported Hoelen's stop of the van. For the foregoing reasons, the ruling of the trial court is reversed, and the case is remanded for trial.

Reversed and remanded.