COURT OF APPEALS OF VIRGINIA


Present:  Judges Bumgardner, Felton and Senior Judge Overton
Argued at Chesapeake, Virginia


KELLY FRANCIS IBANEZ

                                    MEMORANDUM OPINION* BY
v.    Record No. 1200-02-1       JUDGE WALTER S. FELTON, JR.
                                       APRIL 22, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                    John C. Morrison, Jr., Judge

            William P. Robinson, Jr. (Robinson,
            Neeley & Anderson, on brief), for appellant.

            Jennifer R. Franklin, Assistant Attorney
            General (Jerry W. Kilgore, Attorney General,
            on brief), for appellee.


     Kelly Ibanez was convicted in a bench trial of (1) possession

of more than five pounds of marijuana with the intent to

distribute, in violation of Code § 18.2-248.1, and (2)

transportation of more than five pounds of marijuana into the

Commonwealth, in violation of Code § 18.2-248.01.  On appeal,

Ibanez contends that the trial court erred in denying her motion

to suppress evidence because law enforcement officers lacked

probable cause to detain and arrest her.  For the following

reasons, we affirm the judgment of the trial court.

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

## I.   BACKGROUND

On June 24, 1997, Kelly Ibanez and Kim Overton flew from Norfolk International Airport to Los Angeles where they met some of Ibanez's relatives.  On June 25, Virginia State Police Trooper Bennell Powers, a member of the Virginia State Police Drug Interdiction Team, was called to Norfolk International Airport.  The drug interdiction team received information from Los Angeles that two black females, traveling under the names B. Johnson and K. Overton, checked several bags, including two large black bags that were suspected of containing controlled substances.  Their destination was Norfolk.  After a delay for bad weather, the women arrived in Norfolk at approximately 2:00 a.m. on June 26.

Trooper Powers observed two black women deplane together and followed them to the baggage claim area.  As they walked to the baggage claim area, Virginia State Police Trooper David Washington observed them talking, but was unable to hear their conversation.  Overton picked up the luggage first.  At the luggage carousel she looked over her shoulder to Ibanez, and Ibanez nodded to her.  Overton then picked two large black suitcase bags off the carousel.  Ibanez then picked up two smaller bags, and the women proceeded to walk together toward the exit.

At that point, the state troopers approached the women.  Trooper Powers approached Ibanez and asked her if he could speak

-

to her.  He showed her his badge and identified himself.  Trooper Powers asked her if she just flew in on a flight and where the flight came from.  She stated that her flight arrived from California.  He then asked to see her airline ticket.  The airline ticket had the name of B. Johnson on it.  It also indicated a departure date of June 24 and a return date of June 25.  Trooper Powers returned the ticket to Ibanez and asked her how long she was in California.  She responded that she was in California for a couple of days visiting relatives.

At that time Trooper Powers told Ibanez that he was a narcotics agent and asked for her consent to search her luggage.  She gave her consent to search all her luggage.  Another officer, Trooper Hoggard, then proceeded to check Ibanez's luggage.  No contraband or controlled substances were found in her luggage.  Ibanez attempted to leave even though she was not informed that she could leave.  Trooper Powers again stopped her.

At the same time Trooper Powers initially spoke to Ibanez, other state troopers were talking to Overton approximately ten to fifteen feet away.  A drug-sniffing dog was brought over to the luggage and alerted on the two large suitcase bags that were in Overton's possession.  The luggage was searched.  The first bag contained fifty-four pounds of marijuana, and the second bag contained fifty-two pounds, three ounces of marijuana.  Trooper Powers informed Ibanez of the discovery and arrested her.

-

Prior to trial, Ibanez filed a motion to suppress evidence based on her claims of illegal arrest.  The trial court denied her motion.  Ibanez was convicted of possession of more than five pounds of marijuana with the intent to distribute and transporting more than five pounds of marijuana into the Commonwealth.

## II.  ANALYSIS

Ibanez contends that the trial court erred in denying her motion to suppress evidence because law enforcement officers lacked sufficient probable cause to detain and arrest her.

### A.  STANDARD OF REVIEW

"In reviewing a trial court's denial of a motion to suppress, '[t]he burden is upon [the defendant] to show that th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'"  McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).

> In considering a challenge under the Fourth Amendment, questions of reasonable suspicion and probable cause involve questions of both law and fact and are reviewed de novo on appeal.  Ornelas v. United States, 517 U.S. 690, 699 (1996); Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 924 (2000).  Similarly, the question whether a person has been seized in violation of the Fourth Amendment is reviewed de novo on appeal.  See Schneckloth [v. Bustamonte], 412 U.S. [218,] 226 [(1973)]; see also United States v. Mendenhall, 446 U.S. 544, 551 n.5 (1980).

-

>           An appellate court, however, "should take
>           care both to review findings of historical
>           fact only for clear error and to give due
>           weight to inferences drawn from those facts
>           by resident judges and local law enforcement
>           officers."  Ornelas, 517 U.S. at 699.

Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000).

## B.   CONSENSUAL STOP

The initial stop of Ibanez by law enforcement officers was a consensual encounter that did not require probable cause.  A law enforcement officer does not violate the Fourth Amendment "merely by approaching an individual on the street, identifying [himself], and asking the individual questions."  Buck v. Commonwealth, 20 Va. App. 298, 301-02, 456 S.E.2d 534, 535 (1995).  A consensual encounter need not be predicated on suspicion of criminal activity and remains consensual so long as the encountered citizen voluntarily cooperates with police.  Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992) (citing United States v. Wilson, 953 F.2d 116, 121 (4th Cir. 1991)).

Trooper Powers approached Ibanez, identified himself as a law enforcement officer, and asked her if he could speak to her.  She agreed to speak to him, and Trooper Powers began asking her about her trip.  In addition, he asked her if he could search her luggage and she consented.  At the same time Trooper Powers was speaking with Ibanez, other officers were speaking with Overton

-

approximately ten to fifteen feet away.  By agreeing to speak with the officers when they were approached, the women consented to the stop.

## C.  PROBABLE CAUSE

Prior to initiating the consensual stop, law enforcement officers did not possess sufficient evidence to establish probable cause to arrest Ibanez.  Law enforcement officers had obtained information from officials in Los Angeles regarding two black women, traveling under the names B. Johnson and K. Overton, suspecting them of transporting controlled substances in two large black bags.  Upon the arrival of the flight, officers observed two black women deplane together and followed them to the luggage claim.  As they walked to the luggage claim area, the women conversed.  When they arrived at the baggage claim area, Ibanez signaled with a nod for Overton to pick up two large pieces of luggage that matched the description provided by officials in Los Angeles.

Though initially not sufficient to establish probable cause, officers established probable cause to arrest Ibanez with the additional information obtained during the consensual encounter.  During the consensual encounter, Trooper Powers learned when he inspected her airline ticket that Ibanez was traveling under the name B. Johnson, corroborating information obtained from officials in Los Angeles.  When asked how long she was in California, Ibanez responded, "a couple of days," even

-

though her ticket showed one day.  Finally, a drug dog alerted on the two bags that Overton had removed from the baggage carousel after receiving a nod from Ibanez.

Based on the totality of the information obtained from officials in Los Angeles and the consensual encounter, there was sufficient evidence to establish probable cause to detain and arrest Ibanez.  The trial court did not err in denying Ibanez's motion to suppress the evidence.

Accordingly, we affirm the judgment of the trial court.

<u>Affirmed.</u>