## Norfolk

EWAN RICHARDS

v.

COMMONWEALTH OF VIRGINIA

No. 1467-87-1

Decided August 29, 1989

Counsel

Jon M. Babineau (Zoby & Broccoletti, on brief), for appellant.

Virginia B. Theisen, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

Opinion

**BAKER, J.—** Ewan Richards (appellant) appeals from his Norfolk Circuit Court (trial court) bench trial conviction of possession of cocaine with intent to distribute. He alleges that he was illegally detained by the arresting officers at the Norfolk International Airport (airport) and asserts that the trial court erred in overruling his motion to suppress evidence obtained as a result of the initial encounter. In addition, he alleges that the trial court erred by finding that the search of his person and luggage was made with voluntary consent. Upon familiar principles we state the evidence most favorable to the Commonwealth as the prevailing party, granting to it all reasonable inferences fairly deducible therefrom. *Boykins v. Commonwealth*, 210 Va. 309, 311, 170 S.E.2d 771, 773 (1969); *Granberry v. Commonwealth*, 184 Va. 674, 678, 36 S.E.2d 547, 548 (1946) (bench trial findings of fact are given the same weight as jury verdicts).

On February 11, 1987, Virginia State Police Special Agent B. W. Powers (Powers), assigned to a Drug Enforcement Agency

(DEA) task force, was working with other officers at the airport. Powers had been involved in drug related investigations for ten years. The officers were dressed in casual street clothes and were observing passengers arriving from New York's LaGuardia airport, identified as a source city for the distribution of illegal drugs.

After seeing appellant deplane from a LaGuardia flight carrying a nylon shoulder bag and wearing a suede jacket, sunglasses and trousers with large pockets which appeared to be filled to their capacity, Powers observed that as appellant walked down the concourse he looked back several times in the direction of the officers. At that point, Powers decided to follow appellant. Just prior to reaching the entrance from the concourse to the main lobby appellant began to sweat heavily and fidget with his pants and jacket pockets. Appellant turned, entered a coffee shop adjacent to the lobby, used a nearby pay telephone and started toward an exit door. Powers and Investigator Killmon (Killmon) followed as appellant left the airport building.

Outside they approached appellant, who was stationary, and asked if they could speak with him. Appellant responded, "Yes," whereupon Powers identified himself as a policeman and asked if he could see appellant's airline ticket. Without delay appellant produced the ticket which disclosed that it was for passage one-way from LaGuardia to Norfolk, paid for by cash, with no checked luggage and issued in the name of Leroy Smith. After observing the ticket Powers returned it to appellant. Powers then asked appellant for any identification that he might have and was told that it was on Chester Street. Appellant then stated that he was from Jamaica and in response to Powers' request for a passport told Powers that it also was on Chester Street.

Suspecting that appellant was carrying illegal drugs, Powers asked for and received consent to search appellant's shoulder bag. Killmon made the search and found a small set of scales. Powers testified that from his experience this type of scale was used to measure narcotics.

The officers then asked appellant for permission to search his person. He responded that he had to go to the bathroom. According to the testimony of the officers, appellant appeared very nervous and began shuffling his feet while looking in various directions. When told that the search would be brief appellant asked,

"Where?", at which time Powers pointed to the corner two to five feet away and "asked him if the corner was all right." Appellant walked to the suggested place and was "patted down" by Powers, who discovered several clear plastic bags containing cocaine. Appellant was then arrested and searched further. A wallet found on appellant contained information which disclosed that his name was Ewan Richards, not Leroy Smith, as his airline ticket had suggested.

Law enforcement officers do not violate the Fourth Amendment by merely approaching an individual in a public place, by asking him if he is willing to answer some questions or by putting questions to him if he is willing to answer. *Florida v. Royer*, 460 U.S. 491, 497 (1983). The record discloses that appellant had already stopped outside the airport building when he was approached by Powers and Killmon. The initial contact between the detectives and appellant where Powers simply asked appellant if he could speak with him was "clearly the sort of consensual encounter that implicates no Fourth Amendment interest." *Florida v. Rodriguez*, 469 U.S. 1, 5-6 (1984) (per curiam). Likewise, the Fourth Amendment was not implicated when Powers asked appellant if he could see his airline ticket and asked appellant if he had any identification. *See Royer*, 460 U.S. at 501. The record discloses no circumstances amounting to a show of official authority such that "a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

Appellant further asserts that the record fails to support the trial court's finding that appellant voluntarily consented to the search of his person and luggage. He also contends that even if the consent was voluntary it was tainted by appellant's unlawful detention. Because we find that the initial encounter between the detectives and appellant did not constitute a Fourth Amendment seizure we need only decide whether appellant's consent to a search of his luggage and person was voluntary. We find that it was.

Where a warrantless search is made, the burden of proof is on the Commonwealth to prove that consent is voluntarily given. Whether such consent was voluntarily given is a question of fact to be determined from the totality of all the circumstances. *Lowe v. Commonwealth*, 218 Va. 670, 678, 239 S.E.2d 112, 117 (1977),

*cert. denied*, 435 U.S. 930 (1978). The record discloses that on disputed evidence the trial court decided in favor of the Commonwealth. We are not empowered to reverse that decision unless it is plainly wrong and without evidence to support it. *McFadden v. Commonwealth*, 225 Va. 103, 108, 300 S.E.2d 924, 926 (1983); Code § 8.01-860; *see also United States v. Poole*, 718 F.2d 671, 674 (4th Cir. 1983). We find that there is credible evidence to support the finding of the trial court that appellant voluntarily consented to the search of his person and luggage.

■ Appellant further alleges that if the initial inquiry by Powers was a consensual encounter it escalated to an unlawful detention when the officers continued to question him following his statement that he had to go to the bathroom. We disagree. Temporary detentions of airline passengers for questioning are reviewed under the lesser standard enunciated in *Terry v. Ohio*, 392 U.S. 1 (1968), and are permissible because of the public interest in the suppression of illegal transactions in drugs or other serious crimes. *Royer*, 460 U.S. at 498-99. The level of suspicion required for a *Terry* stop is less demanding than the standard of probable cause. *United States v. Sokolow*, 109 S. Ct. 1581, 1585 (1989).

*Sokolow* also involved an airport detention. Chief Justice Rhenquist, speaking for the majority, noted that the Court of Appeals had opined that conduct of nervousness, unchecked luggage, manner of dress, cash payment for tickets, one-way trips and the like, "were only relevant if there was evidence of ongoing criminal behavior and the Government (prosecution) offered 'empirical documentation' that the combination of facts at issue, did not describe the behavior of 'significant numbers of innocent persons.'" Disagreeing with the Court of Appeals, Chief Justice Rhenquist declared that in determining whether an investigative stop has violated a defendant's Fourth Amendment rights, the proper inquiry is not whether additional "empirical documentation" has been proved or whether there is evidence of ongoing criminal activity, but rather "whether the agents had reasonable suspicion that [the defendant] was engaged in wrongdoing" when they encountered him. *Id.*

■ Trained and experienced police officers such as Powers may be able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer. *See, e.g.,*

*Brown v. Texas*, 443 U.S. 47, 52 n.2 (1979); *United States v. Brignoni-Ponce*, 422 U.S. 873, 884-85 (1975). Thus, there may be circumstances where wholly lawful conduct might justify the suspicion that criminal activity "may be" afoot. *Sokolow*, 109 S. Ct. at 1586; *see also Terry*, 392 U.S. at 30. While the officer must be able to articulate more than an "inchoate and unparticularized suspicion or 'hunch,' " *Sokolow* and *Terry* do not require that the articulable facts show that criminal activity actually is afoot, only that it *may* be afoot. If, when appellant stated he had to go to the bathroom, the officers' continued questioning constituted a seizure, the seizure was justified by reasonable articulable suspicion disclosed by this record. Here, the officers watched as appellant arrived from a source city for the distribution of illegal drugs. Appellant's pockets appeared to be filled; he looked back in the direction of the officers several times as they followed him; he began to sweat heavily and fidgeted with his clothing; he possessed a one-way ticket paid for with cash and was without identification; he possessed a set of scales of the type used to measure narcotics; and he became nervous and began shuffling his feet when the officers requested permission to search his person. Based upon these facts, we hold that the officers possessed reasonable suspicion sufficient to detain appellant.

Accordingly, for reasons stated, the judgment of the trial court is affirmed.

*Affirmed.*

Barrow, J., and Cole, J., concurred.