COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Willis and Elder
Argued at Salem, Virginia


DENNIS GLENROY SIMMONDS

                                    MEMORANDUM OPINION* BY
v.    Record No. 2710-99-3          JUDGE SAM W. COLEMAN III
                                       SEPTEMBER 26, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                    Mosby G. Perrow, III, Judge
                     Richard S. Miller, Judge

            William F. Quillian III for appellant.

            Shelly R. James, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.


     Dennis Glenroy Simmonds was convicted in a bench trial of

possession of cocaine.  As a result of the conviction, the trial

court revoked Simmonds' suspended sentence previously imposed in

an unrelated conviction.  Simmonds has appealed from each

judgment.

     On appeal, Simmonds argues that the trial court erred by

denying his motion to suppress the cocaine.  He contends that

the search for the cocaine was unreasonable because the officers

lacked probable cause to forcibly remove the cocaine from his

mouth.  Simmonds further contends that the trial court erred by

─────────────

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

finding that he violated the conditions of a previously suspended sentence and erred in revoking the suspended sentence. We disagree.

## I.  BACKGROUND

In November 1998, Lynchburg Police Department Investigator R.A. Davidson was told that Chaka Herbert Raysor, who was wanted on nine counts of murder as well as other offenses, was in the Lynchburg area.  During the ensuing investigation, Davidson learned that Raysor had been associated with Barbara Nowlin, also known as "B."  Davidson was told by a reliable, confidential informant, that Davidson could purchase cocaine from Nowlin.

At approximately 6:00 p.m. on March 24, 1999, Davidson received a call from the informant stating that Nowlin would be at a local Subway shop with cocaine that she would be selling to the informant.  Davidson arrived at the Subway shop and observed Nowlin's car.  Davidson also observed a male passenger in Nowlin's car, whom he thought might be Raysor.  However, the passenger was the defendant.

At approximately 6:30 p.m., Davidson observed the confidential informant arrive and go behind the Subway shop to conduct the drug transaction with Nowlin.  "Almost instantaneously" after the drug sale, the informant notified Davidson of the sale and of the fact that Nowlin was still in

possession of cocaine. Davidson notified vice investigators to stop Nowlin's vehicle and also notified the tactical unit that he believed Raysor was in the vehicle. The officers stopped Nowlin's vehicle moments later.

Investigator Wayne Duff made what he characterized as a "high risk felony vehicle stop" of Nowlin's vehicle. The uniformed officers had their weapons drawn; they gave verbal commands from covered positions for Nowlin and the passenger to raise their hands and exit the vehicle. Rather than exiting the vehicle as instructed and despite repeated orders to show his hands, Simmonds remained in the vehicle and repeatedly reached under the passenger seat and out of the view of the officers.

The officers approached the vehicle and physically removed Simmonds from the car. Once they had him out of the car, the officers forcibly placed Simmonds, who continued to struggle, on the ground in a prone position. Duff approached Simmonds and immediately recognized that he was not Raysor. Duff also noticed that Simmonds was making chewing motions and that he had a "chalky white powdery substance around his lips." Under the circumstances and based on Investigator Duff's experience, he concluded that the substance was probably cocaine and that Simmonds was attempting to ingest it. Duff was aware that swallowing cocaine posed a significant health hazard that may be fatal. Duff informed another officer what he observed and the

- 3 -

two officers commanded Simmonds to stop chewing, which Simmonds ignored.  The officers applied pressure to Simmonds' throat to prevent him from swallowing.  They tried to force Simmonds' mouth open, but he "clamped" it shut and continued to chew.  After struggling for several seconds, one of the officers sprayed a burst of "cap-stun" in Simmonds' face.  At that point, Simmonds spit out chunks of an off-white substance, clear plastic bags, and a brown paper bag.  The white substance was determined to be cocaine.

## II.  ANALYSIS

### A.  Motion to Suppress

Simmonds argues that the trial court erred by denying his motion to suppress the cocaine.  He contends that the search was an impermissible bodily intrusion.  He contends that even if he was lawfully seized, the officers acted unreasonably when they forcibly removed the drugs from his mouth.

When we review a trial court's denial of a suppression motion, "[w]e view the evidence in a light most favorable to . . . the prevailing party below, and we grant all reasonable inferences fairly deducible from that evidence."  Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991) (citation omitted).  "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them."  McGee v. Commonwealth, 25 Va. App.

- 4 -

193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).  "However, we consider de novo whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment."  Hughes v. Commonwealth, 31 Va. App. 447, 454, 524 S.E.2d 155, 159 (2000) (en banc) (citing McGee, 25 Va. App. at 198, 487 S.E.2d at 261).

### 1.  The Stop

"When the police stop a motor vehicle and detain an occupant, this constitutes a 'seizure' of the person for Fourth Amendment purposes, even though the function of the stop is limited and the detention brief."  Zimmerman v. Commonwealth, 234 Va. 609, 611, 363 S.E.2d 708, 709 (1988).

> A police officer may conduct an
> investigatory stop of a vehicle when he or
> she has an "articulable and reasonable
> suspicion that a motorist is unlicensed or
> that an automobile is not registered, or
> that either the vehicle or an occupant is
> otherwise subject to seizure for violation
> of law."

Commonwealth v. Spencer, 21 Va. App. 156, 159, 462 S.E.2d 899, 901 (1995) (quoting Delaware v. Prouse, 440 U.S. 648, 663 (1979)).  "Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability."  Alabama v. White, 496 U.S. 325, 330 (1990).  "To determine whether an officer has articulated a reasonable basis to suspect criminal activity, a

court must consider the totality of the circumstances, including the officer's knowledge, training, and experience." Freeman v. Commonwealth, 20 Va. App. 658, 661, 460 S.E.2d 261, 262 (1995) (citation omitted). Further, when determining the existence of reasonable suspicion to detain a suspect that is based, at least in part, on an informant's tip, we again look to the totality of the circumstances. See Boyd v. Commonwealth, 12 Va. App. 179, 186-87, 402 S.E.2d 914, 919 (1991). The court should conduct a "balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip." Illinois v. Gates, 462 U.S. 213, 234 (1983).

> In "applying the totality-of-the-circumstances analysis," the Supreme Court has "consistently recognized the value of corroboration of details of an informant's tip by independent police work." Gates, 462 U.S. at 241. When making a warrantless arrest, an officer "'may rely upon information received through an informant, rather than upon direct observations,'" so long as the officer has reasonable grounds to believe the informant's statement is true. Id. at 242 (citation omitted).

McGuire v. Commonwealth, 31 Va. App. 584, 594-95, 525 S.E.2d 43, 48 (2000).

Here, the officers received a tip from a reliable informant that "B" would be arriving at a Subway restaurant and that she would have drugs. Shortly after receiving the tip, Davidson went to the Subway shop and saw a female driving a car that

Davidson knew to be leased to Nowlin. Davidson observed Nowlin's car drive behind the Subway shop and park alongside another vehicle. Davidson then observed the occupants of both vehicles engage in a hand-to-hand transaction. Immediately after the transaction, the informant called Davidson and informed him that the woman driving Nowlin's car was in possession of cocaine. Based on the totality of the circumstances, the evidence sufficiently proved that the police had a reasonable suspicion that Nowlin was driving the car and that she possessed cocaine. Therefore, the stop of Nowlin's car for the purpose of obtaining more information and investigating the suspected crime was not unlawful.

### 2. The Seizure of Simmonds

Following a lawful traffic stop, an officer may order the driver, see Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6 (1977) (per curiam), and any passengers to exit the car, see Maryland v. Wilson, 519 U.S. 408, 414-15 (1997). In Wilson, the United States Supreme Court held that "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." Id. at 415. The Court reasoned that:

> danger to an officer from a traffic stop is
> likely to be greater when there are
> passengers in addition to the driver in the
> stopped car. While there is not the same
> basis for ordering the passengers out of the
> car as there is for ordering the driver out,

- 7 -

                 the additional intrusion on the passenger is
                 minimal.

Id. at 414-15.

     Here, the officers, in effecting the stop of Nowlin's car upon the belief that she had just engaged in a drug sale and was still in possession of drugs, were permitted to order Simmonds out of the car.  Believing that Nowlin had just committed a felony, they ordered the occupants to raise their hands and to exit the vehicle.  The officers repeatedly ordered Simmonds to show his hands; but instead, Simmonds repeatedly reached under the passenger's seat.  The officers forcibly removed Simmonds from the car, placed him on the ground in the prone position, and handcuffed him.

     Handcuffing Simmonds after he was removed from the car was not illegal and did not transform the investigatory detention into an arrest.  "Brief, complete deprivations of a suspect's liberty, including handcuffing, 'do not convert a stop and frisk into an arrest so long as the methods of restraint used are reasonable to the circumstances.'"  Thomas v. Commonwealth, 16 Va. App. 851, 857, 434 S.E.2d 319, 323 (1993), aff'd on reh'g en banc, 18 Va. App. 454, 444 S.E.2d 275 (1994).  Despite repeated orders to show his hands, Simmonds twice reached under the car seat.  Even after he was forcibly removed from the car, he still continued to struggle with the officers.  Based upon the suspected drug activity, Simmonds' refusal to show his hands and

- 8 -

exit the car on command, and his furtive movements, the officers were reasonable in forcibly removing Simmonds from the car and in handcuffing him.

### 3. The Search

> If an officer has reason to believe that a person is committing a felony in his presence by possessing contraband or a controlled substance, the officer has probable cause to arrest the individual without a warrant. When an officer has probable cause to arrest a person, the officer may search the person, particularly where the evidence is of a highly evanescent nature.

Buck v. Commonwealth, 20 Va. App. 298, 304, 456 S.E.2d 534, 536-37 (1995) (citations omitted). "Trained and experienced police officers . . . may be able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer." Richards v. Commonwealth, 8 Va. App. 612, 616, 383 S.E.2d 268, 271 (1989) (citations omitted).

Investigator Duff's observations, in light of his training and experience, gave him probable cause to believe that Simmonds had cocaine in his mouth that he was attempting to ingest to avoid detection. Before forcibly removing Simmonds from the vehicle, Simmonds made "ducking motions" out of the officers' view. Once Simmonds was removed from the vehicle and physically restrained, Duff noticed a "chalky white powdery substance around [Simmonds] lips" and he was making a chewing motion. The officers had the additional reason to believe that the substance

- 9 -

was cocaine because the driver of the vehicle had reportedly just sold cocaine and still possessed cocaine in the vehicle. Duff testified that based on his experience he knew that people commonly try to dispose of cocaine by chewing and swallowing it. Duff further testified that when people ingest cocaine, the cocaine leaves a white chalky substance on the lips. Simmonds ignored orders to open his mouth and spit out the contents. Simmonds resisted when officers applied pressure to his throat and attempted to forcibly open his mouth. The officers acted reasonably in administering a burst of "cap-stun" to force Simmonds to spit out the drugs because there was a risk that Simmonds would destroy the evidence and jeopardize his own health. See Buck, 20 Va. App. at 304, 456 S.E.2d at 537 (finding officers' use of physical force to cause defendant to expel drugs was reasonable where defendant was destroying evidence and creating a danger to his own health and safety); see also Schmerber v. California, 384 U.S. 757, 770-71 (1966) (stating that in deciding whether an intrusive body search is permissible, the court must consider whether the officer had a clear indication that incriminating evidence would be found, whether exigent circumstances existed if no warrant was obtained, and whether the officer extracted the evidence using a reasonable method and in a reasonable manner). Based on the objective, reasonable belief that Simmonds was committing a

crime, the officers had probable cause to arrest Simmonds, thereby rendering the forcible search and removal of the drugs from his mouth lawful.

Accordingly, we hold that the trial court did not err by denying Simmonds' motion to suppress the cocaine.

### B. Revocation of Suspended Sentence

Simmonds had previously been convicted of felonious assault and battery of a law enforcement officer and was sentenced to two years imprisonment, with one year and six months suspended upon the condition that he be of good behavior for a period of three years. As a result of his conviction for possession of cocaine, the trial court found that Simmonds violated his probation and revoked his suspended sentence.

On appeal, Simmonds argues that the trial court erred in finding that he violated his probation and in revoking his suspended sentence for assaulting a police officer because the cocaine conviction was on appeal and had not become final.

Pursuant to Code § 19.2-306, "[t]he court may, for any cause deemed by it sufficient which occurred at any time within the probation period, . . . revoke the suspension of sentence and any probation."

> "A revocation . . . must be based on reasonable cause but a court has broad discretion in making such a determination." Patterson v. Commonwealth, 12 Va. App. 1046, 1048, 407 S.E.2d 43, 44 (1991) (citation omitted). "To put the matter another way,

- 11 -

> the sufficiency of the evidence to sustain
> . . . revocation is a matter within the
> sound discretion of the trial court, . . .
> reversible only upon a clear showing of an
> abuse of such discretion." <u>Slayton v.
> Commonwealth</u>, 185 Va. 357, 367, 38 S.E.2d
> 479, 484 (1946); <u>see</u> <u>Holden v. Commonwealth</u>,
> 27 Va. App. 38, 41, 497 S.E.2d 492, 493
> (1998).

<u>Resio v. Commonwealth</u>, 29 Va. App. 616, 621, 513 S.E.2d 892, 895 (1999).

"[A]n alleged violation upon which revocation is based need not be proven beyond a reasonable doubt." <u>Patterson</u>, 12 Va. App. at 1048, 407 S.E.2d at 44. "[E]vidence that 'the trier of fact in a criminal proceeding found beyond a reasonable doubt that [a] defendant violated a state law is sufficient . . . to support' revocation of a suspended sentence, notwithstanding the pendency of such conviction on appeal." <u>Resio</u>, 29 Va. App. at 622, 513 S.E.2d at 895 (quoting <u>Patterson</u>, 12 Va. App. at 1049, 407 S.E.2d at 45).

Here, Simmonds conceded that he was convicted of possession of cocaine and that the conviction was a violation of his suspended sentence. The trial court, therefore, based solely on the felony conviction, properly revoked Simmonds' suspended sentence subject to the conviction being upheld on appeal. Because we have upheld Simmonds' conviction for possession of cocaine, which was the basis for the revocation, we uphold the

revocation of the suspended sentence.  See Patterson, 12 Va.

App. at 1049, 407 S.E.2d at 45.

Affirmed.