COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judges Benton and Clements
Argued at Chesapeake, Virginia

JOHN HERBERT DAVIS

                                                        OPINION BY
v.    Record No. 0020-00-1     JUDGE JEAN HARRISON CLEMENTS
                                                MAY 22, 2001

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ISLE OF WIGHT COUNTY
E. Everett Bagnell, Judge

Ronald L. Smith for appellant.

Marla Graff Decker, Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee

John Herbert Davis was convicted in a bench trial of driving on a suspended operator's license.[1] On appeal, he contends the trial court erred in denying his motion to suppress evidence from a traffic stop that his driver's license was suspended. Finding no error, we affirm the judgment of the trial court.

---

[1] Davis was also convicted of refusing to take a blood or breath test. This Court does not have jurisdiction over an appeal from a conviction of refusal to take a blood or breath test. See Commonwealth v. Rafferty, 241 Va. 319, 402 S.E.2d 17 (1991). Therefore, the portion of the appeal challenging that conviction is transferred to the Supreme Court of Virginia pursuant to Code § 8.01-677.1.

BACKGROUND

On February 22, 1999, Sergeant R.K. Moore received a dispatch to a fight in progress in the Pinewood subdivision in the Town of Smithfield in Isle of Wight County. Moore could not recall the address to which he was dispatched; however, it was not the same street or address where he later encountered Davis. The officer had no description of the suspect.

While en route to the scene of the fight, Officer Moore received a radio transmission from another officer who was already on the scene. The other officer told Moore that the suspect was running toward Pinewood Drive, but, again, Moore was given no description of the suspect.

When Officer Moore arrived at Pinewood Drive, which was in the same subdivision where the fight occurred, he saw a vehicle rapidly backing out of a driveway. Davis was the operator of that vehicle. Based on the information given to him by dispatch and by the officer on the scene of the fight, Moore stopped Davis's vehicle to determine if Davis had been engaged in the fight. Moore held Davis only long enough to determine if he was the suspect in the fight and if he was wanted for any other offenses. Moore ran a check on Davis's driver's license and determined that it was suspended. Officer Moore also determined that Davis was not the suspect in the fight and was not wanted for any other offenses. Moore then released Davis and told him not to drive because his driver's license was suspended.

Later that day, Officer Moore saw Davis driving. Based on the information he had obtained in the first stop—that Davis's

license was suspended—Moore stopped Davis and arrested him for driving on a suspended license.

ANALYSIS

Davis contends Officer Moore did not have a reasonable, articulable suspicion to stop him on Pinewood Drive. Therefore, he contends, the information that his driver's license was suspended was unlawfully obtained in violation of his Fourth Amendment rights. He further argues that the second stop was unlawful because it was solely based on the fruits of the first illegal stop. Thus, he concludes, the trial court erred when denying his motion to suppress.

The Commonwealth first contends Davis's arguments are procedurally barred because the record, an agreed statement of facts, does not show what evidence from each stop was admitted at trial. We disagree with the Commonwealth and find that Davis's arguments are not procedurally barred.

Our review of an appeal is restricted to the record. Turner v. Commonwealth, 2 Va. App. 96, 99, 341 S.E.2d 400, 401 (1986). Davis has the burden to preserve an adequate record on appeal to allow us to consider the propriety of the trial court's actions. See Smith v. Commonwealth, 16 Va. App. 630, 635, 432 S.E.2d 2, 6 (1993).

Here, the agreed statement of facts reads, in pertinent part, as follows:

> Based on the information received from the dispatch and the first officer on the scene, the officer conducted a traffic stop on the Appellant's vehicle to determine if he had been engaged in the fight. . . . When it was determined that the Appellant was not the suspect and was not wanted he was released

> and instructed not to drive due the [sic] to
> the fact that the Appellant's driver's
> license was checked and determined that he
> was suspended. The Appellant moved to
> suppress the evidence that was obtained as a
> result of the stop and the second stop.
> Appellant maintained that the second stop was
> based on the fruits of the first stop, which
> was unconstitutional.

Despite its lack of precision, we are able to determine from the agreed statement of facts the evidence from the first traffic stop that Davis sought to have suppressed at trial, namely, the discovery by Officer Moore that Davis's license was suspended. The statement of facts also reveals that Davis sought to have all evidence of the second stop excluded at trial because that stop was conducted based on evidence that, according to Davis, was illegally obtained during the first stop. Accordingly, we find that the record sufficiently identifies the evidence that Davis claims was improperly admitted at trial.

"In reviewing a trial court's denial of a motion to suppress, 'the burden is upon [the defendant] to show that the ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (alteration in original) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). While we are bound to review de novo the ultimate questions of reasonable suspicion and probable cause, we "review findings of historical fact only for clear error[2] and . . . give due weight to

---

[2] "In Virginia, questions of fact are binding on appeal unless 'plainly wrong.'" McGee, 25 Va. App. at 198 n.1, 487 S.E.2d at 261 n.1 (quoting Quantum Div. Co. v. Luckett, 242 Va. 159, 161, 409 S.E.2d 121, 122 (1991)).

inferences drawn from those facts by resident judges and local law enforcement officers."  Ornelas v. United States, 517 U.S. 690, 699 (1996) (footnote added).

"If a police officer has reasonable, articulable suspicion that a person is engaging in, or is about to engage in criminal activity, the officer may detain the suspect to conduct a brief investigation without violating the person's Fourth Amendment protection against unreasonable searches and seizures."  McGee, 25 Va. App. at 202, 487 S.E.2d at 263 (citing Terry v. Ohio, 392 U.S. 1 (1968)).  An investigatory stop under Terry anticipates that some innocent people may be stopped.  See Illinois v. Wardlow, 528 U.S. 119, 126 (2000).  Nevertheless, it is a lawful stop designed to permit an officer with reasonable suspicion of criminal activity to quickly confirm or dispel that suspicion. Id.  An innocent person will be detained only briefly and then will be permitted to go on his or her way.  Id.

To determine whether an officer had a reasonable suspicion justifying an investigatory stop, we must examine the "totality of the circumstances and view those facts objectively through the eyes of a reasonable police officer with the knowledge, training, and experience of the investigating officer."  Murphy v. Commonwealth, 9 Va. App. 139, 144, 384 S.E.2d 125, 128 (1989). "'[A] trained law enforcement officer may [be able to] identify criminal behavior which would appear innocent to an untrained observer.'"  Freeman v. Commonwealth, 20 Va. App. 658, 661, 460 S.E.2d 261, 262 (1995) (alterations in original) (quoting Taylor v. Commonwealth, 6 Va. App. 384, 388, 369 S.E.2d 423, 425 (1988)).  The articulable suspicion must be more than a hunch,

but the facts need not show that criminal activity "actually is afoot, only that it <u>may</u> be afoot."  <u>Richards v. Commonwealth</u>, 8 Va. App. 612, 617, 383 S.E.2d 268, 271 (1989).

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape.  On the contrary, <u>Terry</u> recognizes that it may be the essence of good police work to adopt an intermediate response.  A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at that time.

<u>Lee v. Commonwealth</u>, 18 Va. App. 235, 239, 443 S.E.2d 180, 182 (1994).  We have recognized that the circumstances necessary to serve as a basis for a reasonable, articulable suspicion that criminal activity is afoot may include the "characteristics of the area where the stop occurs, the time of the stop, . . . suspicious conduct of the person, proximity to the scene of a recently committed crime[,] and racial identity."  <u>Miller v. Commonwealth</u>, 16 Va. App. 977, 980, 434 S.E.2d 897, 899 (1993) (citation and internal quotations omitted).

The record in this case establishes that, in the early morning hours of February 22, 1999, Officer Moore received a call from police dispatch regarding a fight in progress in the Pinewood subdivision.  While Officer Moore was en route to the scene of the reported fight in response to the call from dispatch, another officer already on the scene of the fight radioed that the suspect was running toward Pinewood Drive, a location in the same subdivision.  When Officer Moore arrived at

Pinewood Drive, he saw a motor vehicle being rapidly backed out of a driveway. Based on the information Moore received from dispatch, the information Moore received from the officer on the scene, and Moore's observation of the conduct of the driver of the motor vehicle, we find that Officer Moore had a reasonable, articulable suspicion that a crime had been committed and that the person leaving the area in the vehicle was the suspect. This information was sufficient to justify Officer Moore's investigatory stop of Davis's vehicle.

Thus, based on our independent examination of the totality of the circumstances reflected in the record, we conclude that Officer Moore did not violate Davis's Fourth Amendment rights when making the initial stop. Davis's challenge to the legality of the second stop assumes the first stop was improper. Having found no impropriety in the initial stop, we conclude that his argument regarding the second stop is without merit. Therefore, we hold that the trial court did not err in denying Davis's motion to suppress. Accordingly, we affirm Davis's conviction for driving on a suspended operator's license.

<u>Affirmed.</u>

Benton, J., concurring in part and dissenting in part.

I concur in the holding that John Herbert Davis's arguments are not procedurally barred and that the record sufficiently identifies the evidence he contends was improperly admitted at trial. I dissent, however, from the holding that the trial judge did not err in denying Davis's motion to suppress.

In Illinois v. Wardlow, 528 U.S. 119 (2000), police officers were "converging on an area known for heavy narcotics trafficking in order to investigate drug transactions" when the officers "observed . . . Wardlow standing next to [a] building holding an opaque bag." Id. at 121-22. The officers seized Wardlow after he "looked in the direction of the officers and fled." Id. at 122. The Supreme Court held that the officers articulated a reasonable suspicion that Wardlow was engaged in criminal activity because of his "presence in an area of heavy narcotics trafficking," the usual presence of drug sellers and lookouts, and "his unprovoked flight upon noticing the police." Id. at 124. It is this series of acts that gave rise to a reasonable suspicion of criminal conduct in Wardlow.

The facts of Wardlow are not remotely similar to the circumstances surrounding the officer's detention of Davis. When the officer received a dispatch to investigate a fight, "[h]e had no description of the suspect" involved in the fight. As the officer was en route in his automobile from an unspecified distance away from the neighborhood, he learned that

the suspect was running away but received "no description of the suspect at that time."  In short, this officer was told to detain a person without having any description of that person or the clothing the person was wearing.

The officer was told the person was running.  Davis was not running.  The officer never received a report that the suspect was driving a car.  Yet, when the officer arrived at some undetermined time after the alert, he detained Davis.  Although Davis's vehicle "rapidly back[ed] out of a driveway," no evidence established that he was fleeing the police, saw the officer, or behaved suspiciously.  The record fails to disclose the basis for the officer's conclusion that Davis might have been the suspect or any other reason for stopping the vehicle and detaining Davis.

The fact that Davis was backing a car out of the driveway on a residential street toward which "the suspect was running" only provided the officer a hunch that Davis might have been the undescribed person that was seen running away.  However, "the Fourth Amendment requires that a seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual."  Brown v. Texas, 443 U.S. 47, 51 (1979).  "An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized

suspicion that the person is committing a crime." Wardlow, 528 U.S. at 124.

In this case, the officer's basis for the detention included only the fact that a disturbance had occurred several blocks away and a person had run toward the street where Davis later was backing his car "rapidly" out of a driveway. The evidence does not even establish that this street was an "area of expected criminal activity." Moreover, the Commonwealth did not prove that Davis's conduct in driving his car was in any way suspicious. The logical conclusion of the Commonwealth's argument is that the officer could have detained any citizen on that street. In perverse fashion, the Commonwealth uses the fact that the officer had no description of the suspect as an affirmative factor to support the detention of Davis. The Supreme Court long ago ruled, however, that "an understandable desire to assert a police presence . . . does not negate Fourth Amendment guarantees." Brown, 443 U.S. at 52. This officer's failure to articulate more than an "inchoate and unparticularized suspicion or 'hunch'" that Davis was engaged in criminal activity renders his detention of Davis unlawful. Terry v. Ohio, 392 U.S. 1, 27 (1968).

In addition, the record proved that the officer used this detention as an opportunity to learn whether Davis "was wanted for any other offenses." To do so, he secured and checked Davis's driver's license, which caused him to learn Davis "was

suspended."  Thus, the initial unlawful detention was extended to include matters that had no bearing on the fight investigation.  The record contains no explanation for the officer's decision to abandon the search for the fight suspect and focus on "other offenses."

Later that same day, the officer again detained Davis because he had learned during the earlier unlawful detention that Davis's "license was suspended."  The evidence in this record proved no "means sufficiently distinguishable" from the initial detention to purge the officer's second detention of Davis from the "taint" of the initial unlawful detention.  Wong Sun v. United States, 371 U.S. 471, 488 (1963).  The exclusionary rule encompasses not only primary evidence that is obtained as a direct result of an unlawful seizure, see Weeks v. United States, 232 U.S. 383 (1914), but also evidence that is derivative of the unlawful seizure, which is often called "a fruit of the poisonous tree."  Nardone v. United States, 308 U.S. 338, 341 (1939).  In other words, the exclusionary rule "extends as well to the indirect as the direct products of [unconstitutional] invasions."  Wong Sun, 371 U.S. at 484.

This is not "a case in which the connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint.'"  Id. at 487 (citation omitted).  The record clearly establishes the primary illegality and further proves that "the

evidence to which instant objection is made has been come at by exploitation of that illegality . . . [and not] by means sufficiently distinguishable to be purged of the primary taint." Id. at 488. To lawfully arrest Davis for this later violation, the officer must have been acting on facts or circumstances that bear no taint of the initial illegal detention. The evidence fails to establish an independent basis for the second detention.

For these reasons, I would hold that the identification and detention of Davis during the second detention were "come at by the exploitation of that [initial] illegality," id., and, thus, may not be used. Because the trial judge erred in refusing to suppress the evidence, I would reverse the conviction and remand for a new trial.