COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, Humphreys and McClanahan
Argued at Richmond, Virginia


JEROME WILLIAMS

MEMORANDUM OPINION* BY
v.        Record No. 3182-02-2                JUDGE ELIZABETH A. McCLANAHAN
APRIL 6, 2004
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Beverly W. Snukals, Judge

John B. Mann (Levit, Mann, Halligan & Warren, on briefs),
for appellant.

Eugene Murphy, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Jerome Williams appeals his conviction for possession of cocaine with intent to distribute

in violation of Code § 18.2-248.[1]  Williams contends the trial court erred in denying his motion

to suppress.  He asserts that the police had no authority to detain him or to retain his

identification and that by doing so his Fourth Amendment rights were violated.  For the

following reasons, we affirm the trial court.

I.  Background

On February 9, 2002, police officers Andrew Carr and Gary Venable were on bicycle

patrol in the area of Cary and Meadow Streets in the City of Richmond, an area identified by

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Williams was also convicted of felony obstruction of justice, which is not at issue in this
appeal.

police as a high drug-crime area. The officers were stopped in a gas station parking lot when they noticed Williams standing with a small group of men in front of a convenience store across the street. When they saw the officers, the group broke up and all but Williams got into a vehicle and drove off. Williams started to walk in the direction of a vacant lot on the left side of the store. The officers testified that they had not noticed any criminal activity, but because people were hanging out in front of the store, the officers split up in order to investigate the situation. Venable rode to the front of the vacant lot while Carr rode down the side of the store. Carr stopped in front of a telephone pole about twenty-five feet away from Williams in an alley that runs behind the lot. The officers testified that they did not intend to stop Williams, but were just watching him.

Williams began walking diagonally across the lot, but when Carr stopped in the alley and straddled his bicycle, Williams turned toward his right and walked directly toward Carr. Carr stated that Williams could have avoided him by walking between the pole and the store on his right, and the vacant lot on his left. When Williams came within five feet of Carr, Carr asked him how he was doing and if he had an I.D. Carr testified that his gun was holstered and that he did not threaten Williams, did not raise his voice, did not order Williams to do anything, but in a normal tone of voice asked if Williams had an I.D. At this point, Venable was approximately five feet away, approaching from behind Carr and Williams. Williams quickly produced his identification and gave it to Carr, saying, "you can check me. I don't have any papers [warrants] or nothing on me."

Officer Venable stopped where Carr and Williams were standing and began to talk to Williams. Carr moved away from Williams and Venable to radio in Williams' information. Venable asked Williams whether he had any weapons on him. Williams said no, but raised his

arms.  Venable patted him down and did not find any weapons.  Within two or three minutes, after finding no outstanding warrants, Carr returned with the identification.  He began handing it back to Williams when he noticed that Williams had something in his mouth.  While still holding out the identification, Carr asked Williams what he had in his mouth.  Williams said he had nothing in his mouth.  Carr repeated the question, asking Williams again what he had in his mouth.  The second time Williams responded Carr plainly noticed a knotted plastic bag containing a white substance sitting on Williams' tongue.  Carr immediately recognized the off-white substance as cocaine.  Car testified that it was "plain that it was crack cocaine."  He then informed Williams it was time to spit out the bag.  Williams turned away quickly and both Carr and Venable grabbed him.  When Williams started flailing, the officers forced Williams to the ground.

While Venable was holding down Williams, Carr pulled himself up on one knee so he could reach his handcuffs.  Carr then noticed two bags on the ground by Williams' mouth, which were later analyzed and found to contain cocaine.  Carr recovered the bags and testified that both the bags were wet.

Prior to trial, Williams sought to suppress the seizure as a violation of his Fourth Amendment rights.  At the suppression hearing, Williams testified that Carr demanded his I.D. and that he thought it was his duty to obey the officer because "they're the authority."  He also testified that when Venable asked if he possessed weapons, the officer told Williams to put his hands behind his back and handcuffed him before frisking him.  Williams contended that he did not have anything in his mouth and that if the officer found anything on the ground, it did not belong to him.

The trial judge found the officers' account of the events more credible than Williams' account. The trial judge also noted that the two officers "testified separately and their testimony was substantially similar in most important respects." In ruling on the motion to suppress, the trial judge stated, "The Court finds that this was a consensual encounter in all respects and that no seizure took place within the meaning of the Fourth Amendment." It further stated that taking into consideration the totality of the circumstances, Williams had been free to leave and not respond to the officer. The court then denied the motion to suppress. The case proceeded to trial, at which Williams was found guilty of possession of cocaine with intent to distribute.

## II. Analysis

On appeal from a denial of a suppression motion, we examine the evidence in the light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences. Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 924 (2000); Sabo v. Commonwealth, 38 Va. App. 63, 69, 561 S.E.2d 761, 764 (2002). In reviewing a trial court's denial of a motion to suppress, the burden is upon the appellant to show that the ruling constituted reversible error. McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731, cert. denied, 449 U.S. 1017 (1980)).

"'Ultimate questions of reasonable suspicion and probable cause' . . . involve questions of both law and fact and are reviewed *de novo* on appeal." Id.; see also Ornelas v. United States, 517 U.S. 690, 699 (1996). Whether a seizure has occurred is a question of fact, and as such, is subject to reversal only if clearly erroneous. United States v. Wilson, 953 F.2d 116, 121 (4th Cir. 1991) (citing United States v. Gordon, 895 F.2d 932, 937 (4th Cir.), cert. denied, 498 U.S. 846 (1990)). Therefore, "we are bound by the trial court's findings of historical fact unless

- 4 -

'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee, 25 Va. App. at 198, 487 S.E.2d at 261 (citing Ornelas, 517 U.S. at 699). "We analyze a trial [court's] determination whether the Fourth Amendment was implicated by applying *de novo* our own legal analysis of whether based on those facts a seizure occurred." Id. See also Satchell v. Commonwealth, 20 Va. App. 641, 648, 460 S.E.2d 253, 256 (1995) (*en banc*); Watson v. Commonwealth, 19 Va. App. 659, 663, 454 S.E.2d 358, 361 (1995).

The Fourth Amendment does not prohibit all searches and seizures, only those that are unreasonable. Hodnett v. Commonwealth, 32 Va. App. 684, 690, 530 S.E.2d 433, 436 (2000) (quoting Welshman v. Commonwealth, 28 Va. App. 20, 30, 502 S.E.2d 122, 126-27 (1998) (*en banc*)). See also Terry v. Ohio, 392 U.S. 1, 9 (1968). Fourth Amendment jurisprudence places police-citizen encounters into three categories: (1) communications between police officers and citizens that are consensual and, therefore, do not implicate the Fourth Amendment; (2) brief investigatory stops that must be based on specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant a limited intrusion; and, (3) highly intrusive, full-scale arrests, which must be based on probable cause. Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 869-70 (1992); Iglesias v. Commonwealth, 7 Va. App. 93, 99, 372 S.E.2d 170, 173 (1988) (*en banc*); Wechsler v. Commonwealth, 20 Va. App. 162, 169, 455 S.E.2d 744, 747 (1995). The Commonwealth contends and the trial court found that the encounter here was consensual and, therefore, did not violate Williams' Fourth Amendment rights.

The United States Supreme Court has held that a police search made pursuant to valid consent does not implicate the Fourth Amendment. See Schneckloth v. Bustamonte, 412 U.S.

218, 222 (1973); Iglesias, 7 Va. App. at 99, 372 S.E.2d at 173. "At trial, the Commonwealth bears the burden of proving that consent was in fact given." Hargraves v. Commonwealth, 37 Va. App. 299, 307, 557 S.E.2d 737, 741-42 (2002) (citation omitted). The Commonwealth must also prove that, under the totality of the circumstances, the consent was "'freely and voluntarily given.'" Id. (quoting McNair v. Commonwealth, 31 Va. App. 76, 82, 521 S.E.2d 303, 306 (1999)).

A consensual encounter occurs when police officers make contact with persons in public places "'to ask them questions,'" provided a "'reasonable person would understand that he or she could refuse to cooperate.'" Wilson, 953 F.2d at 121 (quoting Florida v. Bostick, 501 U.S. 429, 431 (1991)). See also Richards v. Commonwealth, 8 Va. App. 612, 615, 383 S.E.2d 268, 270 (1989). Police encounters "need not be predicated on any suspicion of the person's involvement in wrongdoing," and remain consensual "as long as the citizen voluntarily cooperates with the police." Wilson, 953 F.2d at 121. Once an encounter "'loses its consensual nature,'" Fourth Amendment scrutiny applies. Id. (quoting Bostick, 501 U.S. at 434).

"Faced with situations involving police conduct . . . short of actual physical restraint, the [United States Supreme] Court articulated an objective test which asked whether the police conduct would have led . . . a reasonable person to believe that 'he was not free to leave.'" Id. (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)); see also Goodwin v. Commonwealth, 11 Va. App. 363, 365, 398 S.E.2d 690, 691 (1990); Richards, 8 Va. App. at 615, 383 S.E.2d at 270; Moss v. Commonwealth, 7 Va. App. 305, 307, 373 S.E.2d 170, 171 (1988). This test "depends on the totality of the circumstances, and . . . an objective component to the extent that it is a reasonable person's interpretation of the police conduct that is determinative." Wilson, 953 F.2d at 121 (citing Gordon, 895 F.2d at 937). We ask if "a

reasonable person would not feel free to leave or otherwise terminate the encounter." United States v. Weaver, 282 F.3d 302, 309 (4th Cir.), cert. denied, 537 U.S. 847 (2002) (citations omitted); see also Michigan v. Chesternut, 486 U.S. 567 (1988). The principle embodied by the phrase "free to leave" means the ability to ignore the police and to walk away from them, to "'feel free to decline the officers' requests or otherwise terminate the encounter.'" Wilson, 953 F.2d at 122 (quoting Bostick, 501 U.S. at 436); Weaver, 282 F.3d at 311-12 (unlike traffic stops, pedestrian encounters are much less restrictive of an individual's movements); Payne, 14 Va. App. at 88-89, 414 S.E.2d at 870. "Thus, a seizure occurs when a law enforcement officer, by physical force or some display of authority, restrains in some manner a citizen's freedom of movement. Only when such restraint is imposed is there a basis for invoking Fourth Amendment safeguards." McLellan v. Commonwealth, 37 Va. App. 144, 152, 554 S.E.2d 699, 703 (2001) (citations omitted). The United States Supreme Court has provided examples of circumstances that may indicate that a seizure has occurred. Such examples include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Mendenhall, 446 U.S. at 554; Parker v. Commonwealth, 255 Va. 96, 101, 496 S.E.2d 47, 50 (1998); Baldwin v. Commonwealth, 243 Va. 191, 196, 413 S.E.2d 645, 648 (1992). "'While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response.'" Weaver, 282 F.3d at 309-10 (quoting INS v. Delgado, 466 U.S. 210, 216 (1984)).

    In this case, Williams claimed that Officer Carr "demanded" his I.D. and that he thought it was his duty to obey the officer because "they're the authority." However, in applying the

totality of the circumstances and the objective reasonable person test, the evidence shows that Officer Carr was stopped on his bicycle in an alley at the back of the vacant lot through which Williams was walking. The officer did not stop Williams and did not move toward Williams. Williams changed direction and walked directly toward Carr. When Williams came within five feet of Carr, Carr asked how Williams was doing and if he had identification. Officer Carr and Officer Venable, who was within hearing distance, both testified that Carr merely asked if Williams had identification. Carr did not demand that Williams produce the identification. He did not use a tone of voice indicating compliance was compelled, did not touch Williams, and did not display a weapon. Williams could have avoided Carr by walking between the pole and the store on his right, and the vacant lot on his left. Instead, Williams immediately handed his identification over to Carr without further request, even though Carr had only asked whether Williams had identification. While there were two police officers present, Williams' initial contact was with Officer Carr only. Officer Venable rode up after Williams had already handed Carr his identification. There was no evidence that the two officers' presence was in any way threatening.

Williams argues that what began as a consensual encounter turned into a "Terry stop." He claims that after Carr walked away with his license, Venable handcuffed him in order to frisk him for weapons. Officer Venable testified that upon asking Williams if he had any weapons, Williams answered no and voluntarily put up his hands so he could be frisked. The trial court believed the officers' versions of the encounter as more credible than Williams' version and found that Williams had not been handcuffed. We also find, in reviewing the evidence, that the encounter remained consensual.

Williams also contends that once Carr had his license he was no longer free to leave and was thereby illegally detained. In this case, the officer retained Williams' license for only two or three minutes, and finding no warrants, began handing it back to Williams. It was at this point that the nature of the encounter changed. While in the process of returning the license, Carr noticed that Williams had something in his mouth. Williams denied it, and Carr repeated the question, while still holding out the license to Williams. Carr recognized that Williams had a bag of cocaine in his mouth. Upon noticing the bag of cocaine, Officer Carr had probable cause to turn the consensual stop into a full-scale arrest. When Carr told Williams to spit out the bag, Williams quickly turned as if to bolt away, prompting the officers to grab Williams.

Thus, the circumstances at issue here establish that the initial encounter between Williams and the police was not a detention, but was consensual, and did not implicate the Fourth Amendment. Once the officer saw the bag of cocaine in Williams' mouth, the consensual nature of the encounter terminated. At that point, the officer had probable cause to effect a full-scale arrest.

## III. Conclusion

We hold that the evidence supports the trial court's finding that a seizure did not occur. It was not plainly wrong to find that the encounter between Williams and the police was consensual. Therefore, we find that Williams' Fourth Amendment rights were not violated. Accordingly, we affirm the trial court's decision to deny Williams' motion to suppress.

<u>Affirmed.</u>