COURT OF APPEALS OF VIRGINIA

Present:    Judges Kelsey, Petty and Senior Judge Bumgardner
Argued by teleconference

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.        Record No. 0662-07-1            JUDGE D. ARTHUR KELSEY
                                           OCTOBER 9, 2007
WALTER EARL JENKINS, IV


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Randall D. Smith, Judge

Eugene Murphy, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on briefs), for appellant.

John E. Pappas (Griffin, Pappas & Scarborough, P.C., on brief),
for appellee.


The Commonwealth appeals a trial court order suppressing evidence obtained from

Walter Earl Jenkins, IV, following an investigatory detention. The trial court, the

Commonwealth argues, applied an incorrect legal standard and employed an overly demanding

test for determining reasonable suspicion. We agree. The suppression order is reversed and the

case remanded for trial.

I.

One evening after midnight, Officer B.C. Sayers was off duty and sitting in his car in the

parking lot of Kelly's Tavern. As Sayers was speaking with a friend through his driver's

window, Jenkins pulled his vehicle in front of Sayers. Jenkins was alone in his car. Through an

open window, Sayers saw Jenkins hold up a clear, 1½ inch square, plastic baggie. It appeared to

contain a white substance which the officer immediately recognized as possible cocaine.

Directing his display at Sayers and his friend, Jenkins waved the bag in the air, kissed it, and

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

exclaimed, "Woo" before driving off. "It was just totally random," Officer Sayers explained. Not knowing quite what to make of Jenkins's behavior, Sayers said he attached no particular significance to it.

A police officer for over five years, Sayers testified he had seen baggies of this "exact" type in numerous drug arrests. Because he suspected the baggie contained cocaine, Sayers followed Jenkins's car and reported his observations to Officer Casianos, an on-duty officer. Officer Casianos stopped Jenkins's vehicle and discovered contraband inside.

After considering the evidence, the trial court granted Jenkins's motion to suppress the evidence found in his car. Though acknowledging Jenkins's behavior as "bizarre," the court emphasized the display "had no significance at all in the officer's gathering of facts to develop a reasonable suspicion." From that premise, the court concluded, "*we're left with . . .* the officer seeing someone hold a baggie full of a white substance."

Jenkins's counsel hypothesized that the white substance could have been flour, baking soda, or salt. There was no reason, counsel argued, to conclude it was anything illegal. The court agreed, reasoning that it should not "infer that every time there's a baggie of white material, that it's an illegal substance." While "I don't know why someone would carry that," the judge stated, "I suppose somebody could carry any other white substance with them."

## II.

The Commonwealth argues the trial court erred as a matter of law by refusing to consider Jenkins's bizarre display on the ground that the police officer testified he did not find it significant. The trial court further erred, the Commonwealth contends, by applying an overly demanding legal standard for reasonable suspicion. On both points, we agree.

*Objective Legal Standard*. In its ruling, the trial court emphasized Officer Sayers's subjective reaction to the "bizarre" waving and kissing of the baggie. An officer's action is

reasonable under the Fourth Amendment, however, "regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.'" Brigham City v. Stuart, 126 S. Ct. 1943, 1948 (2006) (emphasis in original and citations omitted). The standard is "*purely* objective and thus there is no requirement that an actual suspicion by the officer be shown." 4 Wayne R. LaFave, Search & Seizure § 9.5(a), at 472 (4th ed. 2004) (emphasis in original and footnote omitted). For purposes of assessing the objective legality of his actions, an officer's "subjective motivation is irrelevant." Robinson v. Commonwealth, 273 Va. 26, 37, 639 S.E.2d 217, 223 (2007) (quoting Stuart, 126 S. Ct. at 1948).

Consequently, "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." Whren v. United States, 517 U.S. 806, 813 (1996) (quoting Scott v. United States, 436 U.S. 128, 138 (1978)). Reviewing courts "are not limited to what the stopping officer says or to evidence of his subjective rationale; rather we look to the record as a whole to determine what facts were known to the officer and then consider whether a reasonable officer in those circumstances would have been suspicious." United States v. Brown, 232 F.3d 589, 594 (7th Cir. 2000) (citation omitted).[1]

For these reasons, Jenkins's behavior with the tiny baggie— a bizarre display directed to two complete strangers — should have been considered by the trial court irrespective of the police officer's testimony that he did not understand its significance.

---

[1] See also United States v. McKie, 951 F.2d 399, 403 (D.C. Cir. 1991) ("The Terry standard being one of objective reasonableness, we are not limited to what the stopping officer says or to evidence of his subjective rationale; rather, we look to the record as a whole to determine what facts were known to the officer and then consider whether a reasonable officer in those circumstances would have been suspicious.").

*Reasonable Suspicion Standard*.  The Commonwealth also challenges the trial court's application of the reasonable suspicion standard, contending the court erred as a matter of law in holding the uncontested facts of this case failed to meet that standard.  We agree.

While an arrest requires probable cause, a mere investigatory stop requires only a "reasonable suspicion" that criminal activity "may be afoot."  United States v. Arvizu, 534 U.S. 266, 273 (2002) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989), and Terry v. Ohio, 392 U.S. 1, 30 (1968)).  The likelihood of criminality "need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard" applicable in other contexts.  Id. at 274 (citing Sokolow, 490 U.S. at 7); see also Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 464-65 (2003) (summarizing standard as a reasonable suspicion the individual "may be involved in criminal activity" (citation omitted)).

Consequently, the possibility of an innocent explanation for the conduct does not necessarily forbid an officer from making a brief, investigatory stop.  See Arvizu, 534 U.S. at 274.  Terry itself involved an officer observing Terry and his companions "repeatedly walk back and forth, look into a store window, and confer with one another."  Id.  "Although each of the series of acts was 'perhaps innocent in itself,'" collectively they were suspicious enough that a reasonable officer had grounds to stop Terry and his companions for purposes of investigating the situation further.  Id. (quoting Terry, 392 U.S. at 22).

Reasonable suspicion, therefore, "need not rule out the possibility of innocent conduct." Id. at 277 (citing Illinois v. Wardlow, 528 U.S. 119, 125 (2000)).  "Thus, there may be circumstances where wholly lawful conduct might justify the suspicion that criminal activity 'may be' afoot."  Richards v. Commonwealth, 8 Va. App. 612, 617, 383 S.E.2d 268, 271 (1989) (citations omitted).  The Fourth Amendment bars only investigatory detentions based upon "inarticulate hunches" devoid of any arguably supportive factual basis.  Terry, 392 U.S. at 22.

In this case, it is possible the tiny baggie could have contained flour, baking soda, or salt as Jenkins's counsel speculated. But that abstract possibility would not preclude an officer from reasonably suspecting the baggie contained cocaine.[2] See generally Carson v. Commonwealth, 12 Va. App. 497, 502, 404 S.E.2d 919, 923 (1991) ("Although possible, it is highly unlikely that a straw this size would have a legitimate use."). In applying the Fourth Amendment, "common sense and ordinary human experience" take precedence over legal abstractions and rigid criteria. United States v. Sharpe, 470 U.S. 675, 685 (1985).

To be sure, the unique circumstances of this case make the cocaine suspicion far more objectively reasonable than Jenkins's hypotheticals. Outside a tavern after midnight, Jenkins made an uninvited celebratory display to two complete strangers. The 1½ inch square baggie, Officer Sayers observed, was exactly the type he had seen used by others to package small amounts of cocaine.[3] When Jenkins kissed the baggie, waved it around, and pronounced a celebratory "Woo," he hardly displayed a level of merriment appropriate for a thimble-full of flour, baking soda, or salt. Given the totality of these circumstances, we hold it was objectively reasonable for Officer Sayers to suspect the baggie contained cocaine. The trial court erred in holding otherwise.

---

[2] "The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal — to 'enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.'" 4 LaFave, supra § 9.5(b), at 482 (citations and footnote omitted).

[3] See Texas v. Brown, 460 U.S. 730, 742 (1983) (finding "the distinctive character of the balloon itself spoke volumes as to its contents — particularly to the trained eye of the officer"); Carson, 12 Va. App. at 502, 404 S.E.2d at 922 (holding the "uniqueness of the straw's size distinguished it from straws one would usually encounter for legitimate purposes"). We disagree with Jenkins's position that our holding is in tension with Harris v. Commonwealth, 241 Va. 146, 400 S.E.2d 191 (1991), or Brown v. Commonwealth, 270 Va. 414, 620 S.E.2d 760 (2005). Both involved a probable cause analysis as opposed to the presence of the lower reasonable suspicion standard. Neither stands for the proposition that by merely imagining a legitimate use for the item, any suspicion of illegality thereby becomes unreasonable.

III.

Because Jenkins was lawfully detained, the trial court erred in suppressing the incriminating evidence discovered during the detention.  We thus reverse the trial court's suppression order and remand the case for trial.

<u>Reversed and remanded.</u>

Petty, J., concurring.

I concur in the result reached by the majority. I would conclude that the officer's testimony that he observed the appellant in possession of a 1½ inch square baggie containing white powder at 1:00 in the morning outside a bar, coupled with the officer's knowledge that cocaine is often packaged in similar baggies, was sufficient to raise a reasonable suspicion that the defendant was in possession of cocaine. However, because I believe in adherence to the doctrine that "an appellate court decides cases 'on the best and narrowest ground available[,]'" Luginbyhl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) (quoting Air Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 531 (1991) (Stevens, J., concurring)), I do not believe that we need to address the question of whether the trial court erred in refusing to consider the appellant's "celebratory behavior" with the baggie of white powder. Accordingly I do not join in that portion of the majority opinion titled *Objective Legal Standard*.